EL PUEBLO DE PUERTO RICO, peticionario, *v.* ALBERTO ZAYAS FERNÁNDEZ, acusado y recurrido.

*Número:* CE-87-148      *Resuelto:* 18 de diciembre de 1987

*Josefa Román García, Procuradora General Auxiliar,* abogada del peticionario; *Alberto Colón Bermúdez,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

■ La Policía de Puerto Rico, luego de válidamente arrestar a un ciudadano y de someter a éste a un "cacheo" o registro superficial, ¿puede someterlo a un *registro minucioso de su persona* luego de tenerlo bajo su control esposado? Reiteramos la doctrina a los efectos de que la validez de este registro dependerá de las circunstancias particulares presentes en cada caso; *esto es, si el mismo es uno razonable o no.* En el de autos, contestamos en la afirmativa.

I

Agentes de la Policía de Puerto Rico, mediante orden de allanamiento expedida por el Tribunal de Distrito de Puerto Rico, Sala de Ponce, allanaron y registraron la residencia del aquí recurrido Alberto Zayas Fernández el día 29 de enero de 1986. En dicho allanamiento se ocuparon una cantidad indeterminada de la droga conocida como cocaína, tres armas de fuego —dos revólveres y una pistola— en relación con las cuales el recurrido no tenía la correspondiente licencia de posesión que requiere la Ley de Armas de Puerto Rico, *y una alegada granada de mano.*

En relación con la droga mencionada y las tres armas de fuego, el Estado radicó denuncias por infracción a la Ley de Sustancias Controladas y por infracción a la Ley de Armas de Puerto Rico. En ese momento no se radicó cargo alguno respecto a la granada ocupada por razón de la misma haber sido referida para los correspondientes análisis de laboratorio con el propósito de determinar si en efecto era una granada.

Cuatro meses más tarde, esto es, el 28 de mayo de 1986, la Policía sometió ante la consideración de un magistrado el caso por la posesión de la granada de mano, determinando dicho magistrado causa probable contra el recurrido Zayas Fernández por una violación a la Ley de Explosivos. Disfrutando en esos momentos Zayas Fernández de libertad bajo fianza, los agentes de la uniformada se dirigieron a la residencia de éste el día 29 de mayo de 1986 con el propósito de diligenciar la nueva orden de arresto expedida.

Al efectuar el arresto, los agentes alegadamente ocuparon en la persona del recurrido un frasco conteniendo la droga conocida por cocaína. Se sometió una nueva denuncia contra el recurrido por infracción a la Ley de Sustancias Controladas de Puerto Rico. Luego de radicado el correspondiente pliego acusatorio ante el Tribunal Superior de Puerto Rico, Sala de Ponce, el recurrido presentó una moción en la cual solicitó la supresión de la evidencia ocupada; esto es, la droga cocaína. Se alegó en la misma que, contrario a lo alegado por los agentes del orden público, la cocaína había sido ocupada ilegalmente en la residencia del recurrido.

En la vista que a esos efectos señalara el tribunal de instancia, los agentes de la Policía de Puerto Rico declararon, en síntesis y en lo pertinente que: se habían dirigido a la residencia de Zayas Fernández con el propósito de diligenciar la orden de arresto; que al no encontrarlo, regresaron hacia sus oficinas; que en el camino se cruzaron con el recurrido; que lo siguieron y al llegar frente a la residencia de éste le informaron que estaba bajo arresto; *que Zayas Fernández se tornó violento, intentando agredir a los agentes tanto con sus puños como con sus piernas*; que se vieron obligados a forcejear con éste; *que uno de ellos* —el agente Richard Echevarría— *lo registró preliminarmente en busca de armas,* no encontrándole ninguna; *que luego de que el*

*recurrido fue esposado, el agente Echevarría procedió a registrarlo formal y detalladamente,* encontrando el frasco con cocaína en un bolsillo de la camisa de Zayas Fernández. Por su parte, el recurrido declaró, en síntesis y en lo pertinente, que al regresar a su casa ese día, se encontró con los agentes de la Policía, a quienes conocía; que el agente Alvarado le informó que tenía una orden de arresto en su contra; que se le "tiraron" encima, esposándolo y lo condujeron dentro de su casa; que él no tenía el frasco de cocaína encima; que asume que lo encontraron dentro de la casa.

El tribunal de instancia, mediante resolución por escrito a esos efectos y luego de haber "[e]xaminado con detenimiento la prueba", declaró sin lugar la supresión solicitada. La defensa solicitó la reconsideración de dicho dictamen. Adujo que aun asumiendo, a los fines de la argumentación, que la versión de los agentes fuese cierta, procedía la supresión por cuanto habiendo sido objeto el recurrido "de un primer registro después de su arresto donde se comprobó, como en efecto fue, de que [*sic*] no portaba sobre su persona ninguna arma de fuego que pudiera ser usada para agredir a los agentes o realizar una fuga", el "segundo" registro realizado, luego de esposado el recurrido, resultaba "irrazonable" ya que "no habí[a] circunstancias apremiantes que lo justificaran". *Exhibit* VI, págs. 9 y 14.

El foro de instancia emitió resolución mediante la cual reconsideró su resolución denegatoria anterior; ordenó la supresión de la evidencia objetada.(1) Inconforme, el Procurador General de Puerto Rico acudió ante este Tribunal imputándole error al así actuar. Le concedimos término al recurrido para que mostrara causa por la cual no debíamos expedir el auto de *certiorari* radicado y dictar sentencia re-

_____

(1) Dicho foro no adujo fundamento jurídico alguno en apoyo de esta nueva determinación.

vocatoria de la resolución recurrida. Ha comparecido. Resolvemos.

## II

La Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico establece que:

No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

No se interceptará la comunicación telefónica.

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 299.

En términos generales y en lo relativo a la admisibilidad en evidencia de material delictivo ocupado al efectuarse un arresto válido —como consecuencia del registro *minucioso* de la *persona* del arrestado, de sus *pertenencias*, o del *área* a su *alcance inmediato*— en nuestra *jurisdicción rige la norma de que dicho registro tiene que ser uno razonable*. En otras palabras, no basta con que el arresto que precede al registro haya sido uno válido. Nuestra jurisprudencia ha rechazado expresamente la regla a los efectos de que un arresto legal convalida ipso facto un registro minucioso de la persona arrestada y del área inmediata a su alcance. *Pueblo* v. *Rivera Rivera*, 117 D.P.R. 283 (1986); *Pueblo* v. *Dolce*, 105 D.P.R. 422 (1976); *Pueblo* v. *Costoso Caballero*, 100 D.P.R. 147 (1971); *Pueblo* v. *De Jesús Robles*, 92 D.P.R. 345 (1965); *Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622 (1964).

En la determinación de si el registro realizado, como consecuencia del arresto legal efectuado, es o no uno razona-

ble debemos "distinguir entre categorías de situaciones, adentrarnos en *la atmósfera total* de cada caso para hallar el significado preciso, dentro de unas circunstancias específicas, *de un concepto tan elusivo y volátil como es el de la razonabilidad*. Nuestra tarea es *conciliar los intereses en pugna* y no permitir que uno pulverice al otro. *El sistema democrático de vida se funda en la libertad con orden*, no en el orden sin libertad o en la libertad que lleve al caos". (Énfasis suplido.) *Pueblo v. Dolce*, ante, pág. 435.

■ Como es sabido, nuestra jurisprudencia ha reconocido unas circunstancias especiales en que resulta procedente o razonable el registro minucioso, sin orden de allanamiento, de la persona del arrestado, sus pertenencias, y del área que está a su alcance inmediato; a saber, cuando el registro se realiza con el propósito de "ocupar armas que puedan ser empuñadas y utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que de otro modo el arrestado podría destruir": *Pueblo v. Dolce*, ante, pág. 434; *Pueblo v. Del Río*, 113 D.P.R. 684 (1982); *Pueblo v. Costoso Caballero*, ante, págs. 152–153.

La correcta solución del presente caso requiere que determinemos si a la luz de las circunstancias específicas del caso, esto es, la "atmósfera total" del mismo, resultaba correcto en derecho someter al recurrido —en adición al claramente procedente "cacheo" o registro superficial— a un registro minucioso y detallado de su persona.

## III

■ La representación legal del recurrido argumenta que habiendo resultado negativo el "cacheo" superficial a que fue sometido éste, el "segundo" registro realizado resulta "irrazonable", ya que "no habí[a] circunstancias apremiantes que lo justificaran". Como vemos, el recurrido

admite —sin expresarlo— el hecho de que la Policía de Puerto Rico, al válidamente arrestar a un cuidadano, tiene derecho a someter a la persona arrestada a un *"cacheo" o registro superficial* antes de conducirlo del lugar en que éste es arrestado a la presencia de un magistrado. Sobre ello, no debe haber duda. *Pueblo* v. *Costoso Caballero*, ante, pág. 150. Dicho curso de acción resulta necesario no sólo en protección de la vida y seguridad del funcionario que efectúa el arresto, sino de todas aquellas personas presentes en el tribunal a donde se conduce el arrestado.[2]

Somos del criterio que en el presente caso nos encontramos ante una de las *excepciones* a la norma general antes expuesta a los efectos de que el hecho de que se efectúe un arresto válido no autoriza ipso facto a los agentes del orden público a llevar a cabo un registro minucioso y detallado de la persona del arrestado. *Pueblo* v. *Rivera Rivera*, ante; *Pueblo* v. *Dolce*, ante. No creemos que pueda existir seria discrepancia de criterio en cuanto a ello. En el presente caso no se trataba de un arresto común y corriente. Los agentes del orden público tenían conocimiento de que, alegadamente, ya en una ocasión anterior se habían encontrado en posesión de esta persona unas armas de fuego y un artefacto tan peligroso y poco común como una granada de mano. A ello debe añadírsele que esta persona, al ser informada de su inminente arresto, se tornó violenta y resistió el mismo. De dichos hechos podía lógica y razonablemente inferirse que dicho ciudadano —contrario a otros— podía estar en posesión de un arma de fuego o de cualquier otra sustancia o artefacto peligroso; por ende, constituía un peligro para la

---

[2] Debe estar claro, sin embargo, que el *"cacheo"* que está rutinariamente autorizado a realizar la Policía de Puerto Rico al válidamente arrestar a un ciudadano es precisamente uno superficial con el único propósito de localizar armas de fuego o de otra índole que puedan poner en riesgo la seguridad de los agentes. *Salvo otras circunstancias apremiantes y justificativas, de ordinario no están autorizados a un registro más allá de lo aquí indicado.*

seguridad de los agentes del orden público. Por otro lado, bajo las circunstancias en que se efectuó el "cacheo" superficial del arrestado —mientras éste se encuentra forcejeando con los agentes— nadie podía estar seguro de que el mismo había sido efectivo. Es por ello que aun después de ser el recurrido "controlado" y esposado, la vida y seguridad de los agentes podía correr peligro. Ello es así por cuanto el mero hecho de que una persona esté esposada no constituye impedimento absoluto para que ésta, de tener algún arma o artefacto peligroso en su persona, pueda atentar contra la vida de los agentes del orden público.

■ Ante todas estas circunstancias, resolvemos que procedía someter al recurrido —por ser ello "razonable"— a *un registro minucioso y detallado de su persona* por cuanto la circunstancia apremiante o de excepción —registro con el propósito de evitar que los agentes puedan ser agredidos— todavía se encontraba presente y latente. No podemos en consciencia exigirle a los miembros de la Policía de Puerto Rico, ante una situación de esta naturaleza, que arriesguen su vida innecesariamente.

Por las razones expresadas, *se expide el auto y se dictará sentencia revocatoria de la resolución mediante la cual el tribunal de instancia declaró con lugar la moción de supresión de evidencia radicada en el presente caso, devolviéndose el mismo a dicho foro para la continuación de procedimientos compatibles con lo aquí resuelto.*