EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* HERMINIO PACHECO BÁEZ y OTROS, acusados y recurridos.

*Número:* CE-91-684 *Resuelto:* 8 de junio de 1992

*Anabelle Rodríguez, Procuradora General*, abogada de El Pueblo; *Héctor Zayas Puig*, abogado de los recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

En el presente caso el Estado recurre de una resolución y orden dictada el 31 de octubre de 1991 por el Tribunal Superior, Sala de Ponce, en la cual se concedió una moción de supresión de evidencia. Plantea como único error que el foro de instancia haya determinado que el Ministerio Público no rebatió la presunción de invalidez del registro sin orden impugnado por los acusados.

El 27 de noviembre de 1991 le concedimos un término a los acusados recurridos para que mostraran causa por la cual no debiéramos expedir el auto solicitado, revocar la Resolución y Orden de 31 de octubre de 1991 y devolver el

caso al foro de instancia para que continúen los procedimientos.

Los acusados recurridos han comparecido y su ponencia no nos convence. Procede resolver según lo intimado.

## I

*Los hechos*

Del recurso presentado y de la oposición surgen los hechos que dan fundamento a la solicitud que nos ocupa. La prueba en la vista de supresión consistió en el testimonio del agente Miguel Vázquez San Antonio. Éste declaró que es un agente de la División de Drogas y Narcóticos del pueblo de Yauco. El día de los hechos, 8 de febrero de 1991, a eso de las 11:00 P.M., él y unos compañeros realizaban una ronda preventiva por el área del parque de pelota del Barrio Palmas de Yauco. Es de conocimiento de la Policía que este lugar se utiliza para el uso y la venta de drogas. Al acercarse pudo observar, en los palcos y asientos del parque, a cuatro (4) personas sentadas allí. Los alumbró con una linterna. Notó que tenían una jeringuilla hipodérmica y un utensilio conocido como "koker" o "cooker", de los que comúnmente se utilizan para quemar la droga. Procedió a identificarse como policía. Entonces el coacusado Herminio Pacheco Báez, que era el que tenía la jeringuilla, la lanzó hacia la grama y le dio con el pie al "cooker". El agente Vázquez San Antonio procedió a registrar a los acusados. Como resultado de dicho registro le ocupó a Pacheco Báez ocho dólares ($8.00), cocaína y marihuana en el bolsillo del pantalón. También ocupó la jeringuilla[1] que éste había tenido momentos antes en sus manos. Inmediatamente después les informó que estaban arrestados. Todo el inci-

---

[1] El agente Vázquez San Antonio expresó que aunque ocupó la jeringuilla no la envió a analizar porque sólo contenía una gotita de líquido, insuficiente para el análisis químico.

dente duró unos cinco (5) minutos. La secuencia de registro y arresto fue simultánea, un incidente detrás del otro. Por estos hechos se acusó a los acusados recurridos de poseer con la intención de distribuir las sustancias controladas conocidas por cocaína y marihuana.[2]

En su escrito para mostrar causa, los acusados recurridos arguyen que procedía la supresión de la evidencia ya que el agente Vázquez San Antonio obró contrario a lo dispuesto en *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972), al registrar a los acusados antes de arrestarlos, no siendo el registro efectuado sin orden, por lo tanto, incidental a un arresto válido. No les asiste la razón; veamos.

## II

*El arresto y el registro incidental*

La solución de la controversia ante nuestra consideración exige que determinemos cuándo es que verdaderamente ocurre el arresto que activa las garantías constitucionales contra registros, incautaciones y allanamientos irrazonables. Art. II, Sec. 10 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1; Emda. IV, Const. EE. UU., L.P.R.A., Tomo 1.

La Regla 4 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, define el arresto de la manera siguiente:

> Un arresto es el acto de poner a una persona bajo custodia en los casos y del modo que la ley autoriza. Podrá hacerse por un funcionario del orden público o por una persona particular. *El arresto se hará por medio de la restricción efectiva de la libertad de la persona* o sometiendo a dicha persona a la custodia de un funcionario. El arrestado no habrá de estar sujeto a más restricciones que las necesarias para su *arresto y detención*, y tendrá derecho a que su abogado o su familiar más cercano lo visite y se comunique con él. (Énfasis suplido.)

---

[2] Se alegó reincidencia.

██ Una persona queda arrestada cuando está efectivamente restringida en su libertad. *Pueblo v. Tribunal Superior*, 97 D.P.R. 199, 201 (1969). En un caso donde ha habido una demostración de autoridad por parte de un agente del orden público, y la persona la ha acatado, la determinación de si ésta ha sido o no arrestada no puede hacerse depender exclusivamente del hecho de que el agente del orden público le haya informado o no al detenido de su intención de ponerlo bajo arresto. Tampoco depende exclusivamente de si el agente tuvo la intención de que la intervención fuera efectuada con el propósito de arrestar a la persona o que así fuera entendida por el detenido. Estos elementos subjetivos no configuran por sí solos un arresto. Si se está o no bajo arresto depende de si al hacer un análisis objetivo de la totalidad de las circunstancias que rodean el incidente se puede concluir que una persona prudente y razonable, inocente de todo delito, hubiera pensado que no estaba en libertad de marcharse. W.R. LaFave, *Searches and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 2, Sec. 5.1(a); O.E. Resumil de Sanfilippo, *Derecho Procesal Penal*, Orford, Equity Publishing Co., 1990, Sec. 7.1; *LaFave and Israel, Criminal Procedure* Sec. 3.5(a) (1984); *United States v. Mendenhall*, 446 U.S. 544 (1980);[3] *Florida v. Royer*, 460 U.S. 491 (1983); *Michigan v. Chesternut*, 486 U.S. 567 (1988).

---

[3] En *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), el Juez Stewart, a quien se le unió el Juez Rehnquist, expresó lo siguiente:

"We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Examples of circumstances that might indicate a seizure*, even where the person did not attempt to leave, *would be the threatening presence of several officers*, the display of a weapon by an officer, *some physical touching of the person of the citizen*, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. ... In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." (Énfasis suplido y escolio omitido.)

■ Ahora bien, "un registro o incautación sin orden judicial se presume inválido, por lo que le compete al Ministerio Público rebatir dicha presunción mediante la presentación de prueba sobre las circunstancias especiales que justifique la intervención". *Pueblo v. Malavé González*, 120 D.P.R. 470, 476–477 (1988). Véanse: *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979); *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988). Tomando en consideración que la garantía constitucional del Art. II, Sec. 10 de nuestra Carta de Derechos, *supra*, protege a la ciudadanía contra registros que, aunque legales, sean irrazonables, a manera de excepción se ha permitido, bajo ciertas circunstancias, el registro sin orden judicial del sospechoso y del área a su alcance, cuando el registro es incidental a un arresto válido. *Pueblo v. Sosa Díaz*, 90 D.P.R. 622 (1964); *Pueblo v. Costoso Caballero*, 100 D.P.R. 147 (1971); *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972); *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); *Pueblo v. Zayas Fernández*, 120 D.P.R. 158 (1987); *Pueblo v. Malavé González*, supra; D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 2da ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, Sec. 7.5. Es "condición indispensable que da origen a la excepción ... que se haya practicado un previo arresto válido ya sea con la orden correspondiente o sin orden en los casos que el arresto se ha encontrado razonable. La razonabilidad constitucional de este registro requiere, además, que el mismo sea *incidental en tiempo y lugar al arresto*", pues el mero hecho de que se haya hecho un arresto legal no con-

---

De otra parte, en *California v. Hodari D.*, 113 L. Ed. 690, 697 (1991), al confrontarse con una situación en que hubo una demostración de autoridad que no produjo el que la persona se detuviera, o sea, la obedeciera, el Tribunal Supremo de Estados Unidos sostuvo lo siguiente:

"...with respect to a show of authority as with respect to application of physical force, a seizure [does not] occurs [unless] the subject ... yield. ... An arrest requires either physical force ... or, where that is absent, submission to the assertion of authority." (Énfasis suprimido.)

Para una crítica a esta posición, véase la opinión disidente del Juez Stevens.

valida, ipso facto, un registro o incautación sin orden. (Énfasis en el original suprimido, énfasis suplido y escolio omitido.) Resumil de Sanfilippo, *op. cit.*, Sec. 9.11, pág. 228. Véase *Pueblo v. Sosa Díaz*, supra.

A tenor con lo dispuesto en la Regla 11(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, un agente del orden público puede efectuar un arresto sin orden "[c]uando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia". Con relación a esta acepción, el agente percibe, por observación personal, con sus sentidos, los elementos constitutivos de una conducta punible. No es necesario que el delito se haya cometido; basta con que el agente así lo crea. Nevares-Muñiz, *op. cit.*, Sec. 5.71(a) y (b).

Si hay o no "motivos fundados" para arrestar, se determina a base de criterios de probabilidad y razonabilidad. Un agente del orden público tiene "motivos fundados" para arrestar a una persona si tiene conocimiento o información "que lleva a una persona *ordinaria y prudente* a creer que la persona a ser arrestada ha cometido un delito público, razón por la cual se hace necesaria la evaluación de las circunstancias específicas de cada caso en particular". (Énfasis en el original.) *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762, 770 (1991). Véanse: *Pueblo v. Alcalá Fernández*, 109 D.P.R. 326 (1980); *Pueblo v. Lafontaine Álvarez*, 98 D.P.R. 75 (1969); Resumil de Sanfilippo, *op. cit.*, Secs. 7.5 a 7.7. "La existencia de 'motivos fundados' para el arresto sin orden de magistrado es el resultado de una rápida evaluación de circunstancias, en la cual el oficial de policía llega a la conclusión de que la persona ha cometido un delito en su presencia. Para así concluir el agente debe relacionar el comportamiento de la persona frente a él, con los hábitos de conducta y manera de actuar de infractores de la Ley en circunstancias similares." (Cita y escolio

omitidos.) *Pueblo ex rel. E.P.P.*, 108 D.P.R. 99, 100–101 (1978).

 Al analizar y sopesar los hechos en el caso ante nuestra consideración y aplicar las normas de derecho que hemos reseñado, debemos también tener presente que los agentes del orden público, "en protección de la ciudadanía en general, tiene[n] perfecto derecho a patrullar las vías [y áreas] públicas de nuestro país". *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144 (1985).

## III

*Aplicación de las normas de derecho a los hechos*

Del testimonio del agente Vázquez San Antonio surge que el día de los hechos por la noche éste se encontraba, en unión a otros compañeros, patrullando, en misión preventiva, en un área conocida por el uso y la venta de drogas. Fue en este lugar donde se toparon con los acusados. Al alumbrarlos con una linterna, notó que uno de ellos tenía una jeringuilla en la mano y a su lado, en el piso, un "cooker". Se identificó como policía. Acto seguido, el coacusado Pacheco Báez botó la jeringuilla que tenía en la mano y con el pie le dio al "cooker". Lo próximo que ocurre, en rápida sucesión de eventos, es el registro de los acusados y la ocupación de la evidencia cuya supresión se solicita. Inmediatamente después del registro, el agente Vázquez San Antonio le indicó a los acusados que estaban bajo arresto. Toda la operación tomó escasamente cinco (5) minutos; " 'la secuencia de registro y arresto fue simultánea, uno detrás de otro ...' ". Petición de *certiorari*, pág. 3. Ante estos hechos tenemos que concluir que se configuró el arresto, una vez el agente observó un acto ilegal a plena vista, se identificó como policía, los acusados se sometieron y se inició la serie de eventos que culminaron cuando el agente informó a los acusados que estaban bajo arresto.

El lugar en que ocurrió el incidente, la rapidez con que se sucedieron los hechos y las actuaciones de los agentes y de los acusados, en otras palabras, la totalidad de las circunstancias, denota claramente la existencia de un ambiente de privación efectiva de la libertad de los acusados recurridos desde el mismo momento en que se inició el incidente (al identificarse el agente Vázquez San Antonio como policía y éstos someterse). Sin duda alguna, los hechos relatados por el agente crearían en cualquier persona prudente y razonable, inocente de todo crimen, la aprehensión de que efectivamente no estaba en libertad de marcharse. El registro efectuado fue razonable y necesario —según las circunstancias de este caso— para asegurarse de que los acusados no tuvieran armas u otros objetos que pudieran utilizar para escapar a la detención y para evitar la posible destrucción de evidencia relacionada con la comisión del delito. *Pueblo v. Sosa Díaz,* supra, pág. 631.

Estamos, además, ante una situación en que los agentes del orden público tenían motivos fundados para válidamente arrestar a los acusados sin orden judicial. Regla 11(a) de Procedimiento Criminal, *supra.* El producto del registro no fue lo que justificó el arresto, pues éste era independientemente válido. Aquí lo que hubo fue una simple inversión del orden usual de arresto formal seguido inmediatamente del registro cuya validez se cuestiona. Bajo estas circunstancias, como bien apunta el profesor Chiesa Aponte, "[s]i hay causa probable para arrestar sin orden o hay orden de arresto, no debe haber un resultado distinto con base en el orden, cuando uno sigue inmediatamente a otro: el registro sigue inmediatamente al arresto, que es el orden natural o lógico, o el arresto sigue inmediatamente al registro". E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Sec. 6.14(A), pág. 411. Véase *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). Lo que no debe ni "pue-

de tolerarse es justificar el arresto con el registro y el registro con el arresto ...". Chiesa Aponte, *op. cit.*, pág. 411.

Por todo lo antes expresado, *se dictará sentencia expidiendo el auto, revocando la resolución y orden emitida el 31 de octubre de 1991 por el Tribunal Superior, Sala de Ponce, y devolviendo el caso al foro de instancia para que continúen los procedimientos de forma compatible con esta sentencia.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton concurrieron con sendas opiniones escritas. El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Entendemos necesario expresarnos por separado —aun cuando brevemente— con el propósito de dejar claramente establecidas las razones por las cuales, a nuestro juicio, es correcto *el resultado* a que se llega en la decisión que hoy emite el Tribunal en el presente caso.

Hacemos la salvedad, de entrada, que entendemos correcta la decisión hoy emitida *bajo la premisa* de que la misma *no* revoca la decisión que emitiera este Tribunal en *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972). Esto es, la norma jurisprudencial establecida en el referido caso de *González Rivera* —a los efectos de que *no* es jurídicamente permisible que un agente del orden público primero registre a una persona y entonces, luego de encontrar evidencia delictiva, proceda a arrestar a la referida persona— *continúa vigente en nuestra jurisdicción,* haciendo inadmisible en evidencia en nuestros tribunales el material delictivo así obtenido. *Ello necesariamente tiene que ser así ya que,*

*desde hace más de cuarenta años, resolvimos que un regis-*
*tro ilegal no deja de serlo por razón de que en la persona o*
*lugar en que el mismo se efectúa se encuentre evidencia*
*delictiva.* Véase *Pueblo v. Barrios,* 72 D.P.R. 171 (1951).

Lo que sucede es que los hechos que dieron lugar a la
decisión que se emitiera en *Pueblo v. González Rivera,*
ante, son diferentes —*y, por ende, distinguibles*— de los
hechos del caso hoy ante nuestra consideración. Conforme
surge de la relación que de los hechos hiciera el Tribunal
en el citado caso de *Pueblo v. González Rivera,* págs. 653–
654:

> Esa tarde recibieron una querella escrita de manos de una per-
> sona conocida del Agente Díaz Alamo y quien se había identifi-
> cado como Comisario de Barrio del Sector conocido como Colec-
> tora, Coroza, Gandul y Trinchera. En cinco o seis ocasiones
> anteriores el Comisario había dado querellas a los agentes, las
> que fueron investigadas por éstos con resultado positivo. Todos
> esos sectores tienen la reputación de ser lugares donde se tra-
> fican diariamente con drogas. En la tarde de referencia los
> agentes se dirigieron a la calle Gaviota a investigar la querella
> del Comisario y tratar de localizar a las personas que se denun-
> ciaban en dicha querella. Al llegar a la calle Gaviota, los agen-
> tes abandonaron el automóvil y continuaron caminando a pie.
> Al penetrar en uno de los callejones, vieron un grupo de perso-
> nas, entre las cuales se encontraban los acusados-apelantes. Al
> notar la presencia de los agentes, *el acusado Olmedo García le*
> *pasó a la co-acusada María González Rivera un paquetito en-*
> *vuelto en papel color rosa y ésta se lo llevó al seno.* El agente
> Díaz Alamo se dirigió a María y agarró el paquete que sobresa-
> lía un poco de su escote. Al *examinar el paquete el agente en-*
> *contró* una caja partida de cigarrillos y dentro de la caja 21
> *"decks"* y otra caja pequeña de cigarrillos conteniendo 13 sobre-
> citos de papel plomado que se usan para envasar la cocaína.
> *Fue entonces que el agente puso bajo arresto a María y a*
> *Olmedo.* Analizando químicamente los 13 *"decks"* dieron todos
> positivos de cocaína. (Énfasis suplido y en el original y escolio
> omitido.)

Como podemos notar, de una mera lectura de lo ante-
riormente transcrito, el agente del orden público en el caso
de *Pueblo v. González Rivera,* ante, *realmente no tenía mo-*

*tivos fundados para arrestar a ninguna de las personas que ese día se encontraban en la Calle Gaviota del sector conocido como Colectora, Santurce, Puerto Rico.* Ello así, por cuanto, a pesar de que dicho agente había anteriormente recibido información sobre alegado trasiego de drogas en dicho sector, *lo único que observó* fue a una persona pasarle a otra *"un paquetito envuelto en papel color rosa"*; lo cual, ni aun bajo la circunstancia adicional de ser dicho sector uno "caliente", *no* le autorizaba a arrestar a dichas personas por carecer los agentes de motivos fundados para ello.

En el caso hoy ante nuestra consideración *la situación fáctica es completamente distinta.* En adición a que el lugar en controversia, igualmente, era conocido como uno utilizado "para el uso y venta de drogas", la observación que hace el agente —cuatro personas sentadas, con una "jeringuilla hipodérmica y un utensilio conocido como 'koker' o 'cooker', de los que comúnmente se utilizan para quemar la droga"— *lo llevan a tener "motivos fundados", suficientes en derecho, para arrestar a dichas personas al amparo de las disposiciones de la Regla 11(a) de Procedimiento Criminal*, 34 L.P.R.A. Ap. II.

Bajo *esas circunstancias específicas*, y como correctamente se expresa en la Opinión del Tribunal, *resulta inmaterial* que el agente del orden público *verbalmente* le informara a estas personas que las estaba poniendo bajo arresto *antes, o después*, de proceder a registrarlas. En otras palabras, teniendo el agente "motivos fundados" para arrestar a los peticionarios, *no* es ilegal el registro que de dichas personas realizó el agente por el mero hecho de que no les hubiera informado a éstos que efectivamente los estaba arrestando.

Con relación a esta clase de situaciones, lo verdaderamente importante, y determinante, lo es la existencia, o no, de los "motivos fundados" para intervenir y/o arrestar al ciudadano. E.L. Chiesa, *Derecho procesal penal de Puerto*

*Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Cap. 6, Sec. 6.14.

En resumen, a nuestra manera de ver las cosas, debe quedar claro que la norma jurisprudencial hoy establecida no revoca, ni es contradictoria a, la norma jurisprudencial que establecimos en *Pueblo v. González Rivera*, ante. Las mismas, en nuestra opinión, son completamente armonizables entre sí y ambas constituyen precedente obligatorio para los tribunales de instancia.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que en las circunstancias de autos había motivos fundados para arrestar a los acusados, y que para evitar la destrucción de la prueba procedía que el registro se practicara inmediatamente antes del arresto, concurro con la revocación de la resolución recurrida. Desde *Pueblo v. González Rivera*, 100 D.P.R. 651, 656–657 (1972), a modo de excepción, aceptamos la validez de un registro sin orden "cuando la propiedad a ser incautada está en proceso de destrucción o en inminente riesgo de ser destruida ...". Por estas razones no estimamos aconsejable pronunciarnos sobre si en el caso de autos se configura un arresto cuando el agente los alumbró con la linterna y se identificó como policía. Una vez establecido el peligro de destrucción de la evidencia y la existencia de causa probable para arrestar desde el inicio de la intervención, es innecesario calificar este primer contacto como un arresto por alegadamente haber ocurrido una muestra de autoridad y los apelantes haberse sometido a ésta.