# 96 DTA 85

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS, HUMACAO, GUAYAMA**
**PANEL I**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

ADA LUZ VEGA JIMENEZ
Peticionaria

Núm. KLCE-95-0102

Panel integrado por su presidente, Juez señor Amadeo Murga
y los Jueces señora Pesante Martínez y señor Rivera Pérez

Amadeo Murga, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

Revocamos la resolución que se negó a suprimir una evidencia obtenida sin orden de allanamiento mientras los agentes de orden público entraron a la residencia de la peticionaria sin el consentimiento de ésta a diligenciar una orden de arresto en la persona de un tercero. Veamos.

Contra el ciudadano José A. Roque Concepción conocido por *"Cucaracho"* se expidió el 26 de julio de 1994 una orden de arresto por el delito de escalamiento agravado. El 13 de noviembre de 1995 a las 11:40 A.M., mientras el agente del C.I C. de la zona de Cayey, Jorge L. Rivera, se encontraba en funciones de su empleo, recibió información de parte de su superior, el Teniente Rivera, a los efectos de que el Sr. Roque Concepción se encontraba en la residencia ubicada en la Calle D Número 39 de Estancias de Gurabo. Le informó además, que la noche anterior se había tratado de arrestarlo, pero se le había escapado a los agentes del orden público. Con esa información y la orden de arresto que había sido expedida, cuatro agentes se dirigieron a la Urb. Estancias de Gurabo, Calle D Número 39 para diligenciar la orden de arresto del Sr. Roque Concepción. Al llegar a ésta, estacionaron el vehículo en que iban frente a la residencia. El Teniente Rivera llevó a los agentes hasta la residencia que tiene dos puertas, una que da al balcón y otra a la cocina. Este y el Agente José Miranda cubrieron la puerta que da al frente de la residencia y el Agente Jorge L. Rivera y otro agente de nombre Ito Miranda cubrieron la puerta de la cocina. El Agente Jorge L. Rivera fue a la puerta de la cocina la cual estaba abierta con la intención de arrestar al Sr. Roque Concepción. Se paró y se asomó por la puerta para poderlo ver. Portaba un arma larga, rifle R-15 AZ. Miró hacia el interior de la cocina y observó que había una mujer sentada en la mesa de la cocina con el Sr. Roque Concepción. Entonces indicó a Roque Concepción que era policía y que tenía una orden de arresto y le ordenó tirarse al suelo. El Sr. Roque Concepción se tiró al suelo y el agente José L. Rivera procedió a arrestarlo. En ese momento, vio dos bolsas grandes y una maleta color gris. El arresto del Sr. Roque Concepción ocurrió en fracciones de segundos. El Agente Ito Miranda entró y le gritó al Teniente Rivera, quien estaba por el frente de la residencia, que había arrestado al Sr. Roque Concepción y que había ocupado el material, o sea las dos bolsas grandes y la maleta color gris. La peticionaria, Sra. Ada Luz Vega Jiménez fue también arrestada. Se le hicieron las advertencias de ley. La evidencia ocupada fue analizada y dio positivo para cocaína en una cantidad que se aproximaba al medio kilo. Se encontraron además dos magazines y como 56 balas en la misma mesa. La residencia D-39 de Estancias de Gurabo es la residencia de la peticionaria. El Sr. Roque Concepción se encontraba de visita. El Agente Jorge L. Rivera no solicitó una orden de allanamientc porque iba con el propósito de arrestar al Sr. Roque Concepción "y no el de ocupar nada".

A la peticionaria Ada Luz Vega Jiménez se le sometió una denuncia por infracción al Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico. El 20 de junio de 1995 la defensa presentó una moción. de supresión de evidencia. La vista de la moción se celebró el 13 de noviembre del mismo año. El tribunal con fecha 27 de noviembre la declaró sin lugar.

El 12 de diciembre de 1995 la peticionaria acudió a nosotros mediante petición de *certiorari* para revisar la resolución. Solicitó que se paralizara la celebración de la vista del caso, la cual estaba señalada para el 14 de diciembre. Con fecha 13 de diciembre, ordenamos la paralización de los procedimientos y concedimos al Pueblo de Puerto Rico el término de veinte (20) días para que mostrara causa por la cual no se debía revocar la resolución que denegó la moción de supresión de evidencia de la recurrente Ada Luz Vega Jiménez. Nos amparamos en lo resuelto en el caso *Steagald v. U.S.* 451 U.S. 204 (1981). El Procurador General ha comparecido y estamos en posición de decidir.

Hemos examinado con detenimiento los argumentos del Procurador en oposición al recurso, pero los mismos no nos convencen y resolvemos conforme a lo intimado en nuestra orden de mostrar causa.

# I

El Artículo II, §10 de la Constitución del Estado Libre Asociado de Puerto Rico dispone en lo que resulta pertinente:

*"...[n]o se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.*

*[...]*

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo-particularmente el lugar a registrarse, y las personas a detenerse o las cosas a*

*ocuparse."*

Por su parte la Constitución de los Estados Unidos dispone en su Enmienda Cuarta que:

*"No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas."*

Estas dos disposiciones constitucionales se suman para proteger el derecho de nuestros habitantes contra intrusiones y violaciones de parte del estado a la seguridad e intimidad que merece el hogar y cualquier sitio en donde exista una expectativa razonable de intimidad. *Katz v. United States* 389 U.S. 347 (1967); *Pueblo v. Rivera Colón*, ___ D.P.R. ___ (1991), **91 J.T.S. 61.**

Nuestra Constitución tiene en esta área una protección más amplia que la Enmienda Cuarta de los Estados Unidos y podría vedar intrusiones al hogar o áreas de expectativas razonables de intimidad que no estarían vedadas bajo los parámetros de la federal. *Pueblo v. Rivera Colón, supra.* Sin embargo, la situación ante nosotros no requiere llevar a cabo un análisis sobre los contornos más amplios de la protección contra allanamiento irrazonable bajo nuestra Constitución, análisis que habría que hacer exclusivamente a la luz de la Sección 10 del Artículo II de nuestra Constitución. *Pueblo v. Rivera Colón, supra.* Esto es así porque, aun aplicando la protección mínima que confiere la Enmienda Cuarta de la Constitución Federal el allanamiento llevado a cabo en el presente caso resulta en una violación de dicha Enmienda Cuarta y *a fortiori* de nuestra más liberal Sección 10 del Artículo II.

En *Steagald v. U.S., supra,* el Tribunal Supremo de los Estados Unidos tuvo la oportunidad de interpretar la protección que confiere la Enmienda Cuarta de la Constitución de los Estados Unidos a las personas cuyo domicilio se les allana con el propósito de diligenciar una orden de arresto en una tercera persona que se encuentra en dicha vivienda. El Tribunal Supremo de los Estados Unidos resolvió que en ausencia de consentimiento de parte del morador o de circunstancias apremiantes es necesario una orden de allanamiento para diligenciar la orden de arresto en la persona de un tercero que esté en dicha propiedad. En *Steagald,* al igual que en el presente caso, los agentes entraron a la residencia del acusado con el fin de diligenciar una orden de arresto contra un tercero. Como consecuencia de la entrada no consentida y en busca del sujeto a ser arrestado, encontraron cocaína, por lo cual se le sometió la acusación contra el residente de la vivienda. *Steagald* solicitó la supresión de la evidencia sin éxito ante el Tribunal de Distrito. El Circuito de Apelaciones confirmó la negativa del Tribunal de Distrito a suprimir la evidencia. El Tribunal Supremo de los Estados Unidos, sin embargo, revocó y estableció claramente que en ausencia de circunstancias apremiantes o del consentimiento del domiciliario era necesario una orden de allanamiento para entrar en la propiedad por lo que la evidencia obtenida en violación de dicha norma debía ser suprimida.

En *Pueblo de Puerto Rico v. Rivera Colón, supra,* nuestro Tribunal Supremo tuvo la oportunidad de interpretar el fallo de *Steagald* ante hechos parecidos. A tono con lo expuesto en *Steagald* resolvió que en ausencia de un consentimiento del morador o de circunstancias apremiantes una orden de arresto contra una persona que se puede encontrar en la residencia de tercero no faculta a la policía entrar a dicha residencia sin obtener previamente una orden de allanamiento de dicha residencia. El propósito de ese requisito es ubicar en un funcionario judicial neutral la determinación de causa probable para creer que el sospechoso a ser arrestado se encuentre en la residencia allanada.

El Procurador General en su moción en cumplimiento de nuestra orden para mostrar causa hace un pálido esfuerzo para colocar los hechos de este caso fuera del ámbito de la doctrina establecida en *Steagald y Pueblo v. Rivera Colón, supra.* Nos señala que la expectativa de intimidad que confiere la protección de la Enmienda Cuarta de la Constitución de los Estados Unidos y de la Sección 10 del Artículo II de nuestra Constitución es únicamente una contra registros y allanamientos irrazonables y que lo que es razonable depende de las circunstancias. Sostiene que nuestro Tribunal Supremo no ha considerado irrazonable el que agentes de la policía se acerquen a lugares cercanos a las casas implícitamente abiertos al público para hacer preguntas a los moradores de ésta. *Pueblo v. Meléndez Rodríguez* ___ D.P.R. ___, **94 J.T.S. 103**. Nos señala además, que en circunstancias apremiantes se

justifica dispensar del requisito de la orden de allanamiento.

Argumenta también el Procurador que el hecho de que contra Roque Concepción se había emitido una orden de arresto por apropiación ilegal con una fianza de $50,000 y que éste se le había escapado la noche anterior a los agentes de orden público, demostraba la capacidad de fuga del sospechoso y la necesidad de arrestarlo con premura. Sostiene asimismo que el frente de la residencia no tenía verja y que la puerta de la cocina por donde entraban los agentes a arrestar al ciudadano Roque Concepción estaba abierta. Pretende distinguir a *Steagald* a base de que en *Steagald* la puerta estaba cerrada. Finalmente, sostiene que la evidencia ocupada era una a plena vista, por lo que no se justifica la supresión de ésta.

Los argumentos del Procurador resultan poco persuasivos.

Aunque, según lo resuelto en *Pueblo v. Meléndez Rodríguez, supra*, un agente del orden público puede acercarse a la puerta de una vivienda localizada en un área implícitamente accesible al público con el propósito de conversar con una persona o hacer preguntas sobre el paradero de un tercero, esto no le da derecho a entrar a la vivienda sin el consentimiento de dicha persona. En el presente caso no hay prueba de que los agentes solicitaran el consentimiento de la peticionaria para entrar a la propiedad o que ésta *motu proprio* consintiera al registro. Tampoco se acercaron a la puerta meramente a preguntar sobre Roque Concepción. Su acción fue la de entrar a la residencia.

El argumento de que habían circunstancias apremiantes (exigent circumstances) tampoco es convincente. Los hechos indican que la información sobre el paradero del ciudadano Roque Concepción y su ubicación específica en la residencia en las Estancias de Gurabo fue transmitida al agente Jorge Rivera del orden público a las 11:40 de la mañana el día 13 de noviembre, mientras éste se encontraba en Cayey. Luego de obtener esa información, éste y otros tres agentes se dirigieron del área de Cayey hasta el pueblo de Gurabo a llevar a cabo el arresto. No había razón alguna para que los agentes con esa información dejaran de obtener una orden de allanamiento. Si consideraban que el factor tiempo era esencial y que el sospechoso podía abandonar la propiedad antes de obtener la orden, pudieron dirigirse a dicho lugar y proteger las salidas de la casa (como lo hicieron) y arrestar al ciudadano cuando saliera de la casa o entrar a la misma una vez obtuvieran la orden de allanamiento.

Las circunstancias apremiantes que sirven de excepción a la norma sentada en *Steagald* no es cualquier preocupación subjetiva que tengan los agentes de orden público, como se señala en *U.S. v. Curzi* 867 F2d 36 (ler. Cir. 1989) a la pág. 41:

*"The point is, we think, so basic that we need not linger long in its position. The unreasonable search of a person's home is the "chief evil against which the wording, of the Fourth Amendment is directed." (Citas omitidas.)...and the "zone of privacy [is nowhere] more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." (Citas omitidas.) Therefore, warrantless searches of a dwelling-place are presumptively unreasonable unless the police can prove consent or the existence of exigent circumstances. (Citas omitidas.) The circumstances which excuse failure to obtain a warrant are "few in Number and carefully delineated, (Citas omitidas.), especially where one's home is concerned."* (Citas omitidas.)

En *Pueblo v. Rivera Colón, supra,* **91 JTS 61**, a la pág. 8732, nuestro Tribunal Supremo elaboró también este concepto.

*"En términos generales se requiere que a la luz de la totalidad de las circunstancias, los agentes del orden público demuestren que existe urgencia para la acción policial debido a la existencia de circunstancias que impiden la obtención de la orden. La Fave, supra, Sec. 6.1(f) a la pág. 595; Michigan v. Tyler, 436 US 499 (1978); Donnino & Girise, Exceptional Circumstances for a Home Arrest, 45 Alabama L. Rev. 90 (1980). Entre las circunstancias apremiantes se pueden considerar, entre otras cosas, el riesgo para la seguridad pública y para la policía si no se actúa con premura; la gravedad del delito imputado al sospechoso; la posibilidad de que la evidencia sea destruida; la posibilidad de fuga y si el sospechoso genera violencia que produzca un claro e inminente peligro en la vida de los agentes."* (Citas omitidas.)

*Finalmente, mediante la vigilancia correspondiente, los agentes del orden público deben obtener suficiente información para creer que el sospechoso se encuentra en casa del tercero y deben demostrar que, a la luz de las circunstancias, **sería irrazonable ir en búsqueda de una orden de allanamiento.**"* (Enfasis en el original.)

En el presente caso el estado no probó de que no hubiese oportunidad de obtener una orden de allanamiento previo a entrar a arrestar al sospechoso. De hecho, la razón que adujeron es que no obtuvieron la orden porque no iban a buscar nada y solamente arrestar a una persona. Es claro que no había ninguna necesidad urgente e inaplazable que impidiera la obtención de la orden de allanamiento.

Tampoco tiene peso el argumento de que la puerta se encontrase abierta. Hacer depender la protección que confiere la Constitución de los Estados Unidos y Puerto Rico del hecho de si los ciudadanos mantienen las puertas cerradas o abiertas es una burla a la protección de dichas disposiciones constitucionales.

Por último, sostiene el Procurador General que la evidencia obtenida estaba a plena vista. Eso no es correcto. Los agentes declararon que luego de entrar a arrestar a Roque Concepción vieron inmediatamente la maleta y las bolsas. No hay duda de que el descubrimiento de la evidencia fue como resultado de haber entrado ilegalmente a dicha propiedad.

En resumen, los agentes entraron a la residencia de la peticionaria, Sra. Luz Vega Jiménez, a arrestar a un tercero, sin una orden de allanamiento, sin su consentimiento y sin que mediaran circunstancias excepcionales que justificaran prescindir de una orden de allanamiento expedida por un magistrado neutral. Como consecuencia de tal allanamiento inconstitucional descubrieron prueba en contra de dicha peticionaria. Esta debe ser suprimida.

Por tanto, se revoca la resolución recurrida y se ordena la supresión de la evidencia obtenida en el allanamiento de la residencia de Ada Luz Vega Jiménez, peticionaria. El Juez Rivera Pérez disiente en opinión separada.

Regístrese y notifíquese.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

## OPINION DISIDENTE DEL JUEZ DE
## APELACIONES SR. RIVERA PEREZ — 96 DTA 85

Disentimos, muy respetuosamente, de la decisión tomada por la mayoría de revocar la resolución recurrida emitida por el Tribunal de Primera Instancia, denegando la solicitud de supresión de evidencia presentada por la acusada-recurrente, Ada Luz Vega Jiménez. Nuestro disenso se fundamenta en la errónea aplicación al caso de autos de la norma sentada por el Hon. Tribunal Supremo de Estados Unidos en el caso de *Steagald v. U.S.*, 451 U.S. 204 (1981) y aquella formulada por el Hon. Tribunal Supremo de Puerto Rico en el caso de *Pueblo v. Rivera Colón,* ___ D.P.R. ___, **91 JTS 61**, opinión del 26 de junio de 1991. La relación de hechos que surge del expediente de este Tribunal no nos permite realizar tal ejercicio.

### I

Para poder efectuar un completo análisis de la aplicación doctrinaria al caso de autos, se impone la realización de una exposición meticulosa y completa del trasfondo fáctico según la prueba creída por el Tribunal de Primera Instancia, Sala Superior de Caguas, en ocasión de declarar sin lugar la moción de supresión de evidencia presentada por Ada Luz Vega Jiménez. Ese ejercicio es de imposible realización en este caso, pues con posterioridad a la resolución emitida por este Tribunal, el 12 de

diciembre de 1995, intimando al Pueblo de Puerto Rico a mostrar causa por la cual no se debía revocar la resolución recurrida y presentado por dicha parte su escrito de mostrar causa, el 28 de diciembre de 1995, no se optó por tal curso procesal en descargo de nuestro ministerio revisor. Ese curso de acción resultaba necesario en vista de la interpretación distinta que le dan ambas partes al testimonio del agente de la Policía, Jorge L. Rivera. La decisión de este Tribunal, manifestada por la mayoría del panel, está sostenida, en parte, sobre la interpretación que le da a la naturaleza de la observación que realizó ese Agentede la Policía a través de la puerta de la cocina que se encontraba abierta. Concluyó, este Tribunal, lo siguiente: "El Agente Jorge L. Rivera fue a la puerta de la cocina la cual estaba abierta con la intención de arrestar al Sr. Roque Concepción. Se paró y se asomó por la puerta para poderlo ver... Miró hacia el interior de la cocina y observó que había una mujer sentada en la mesa de la cocina con el Sr. Roque Concepción..." Este Tribunal concluye, además, que: "[e]l Agente Jorge L. Rivera no solicitó una orden de allanamiento porque iba con el propósito de arrestar al señor Roque Concepción y no el de ocupar nada. En ocasiones, este Tribunal concluye sobre hechos que, muy respetuosamente, aun cuando son extraídos del recurso de *certiorari* son incompletos e imprecisos. Este Tribunal expresa lo siguiente: "El Agente Ito Miranda entró y le gritó al Teniente Rivera, quien estaba por el frente de la residencia, que había arrestado al Sr. Roque Concepción y que había ocupado el material, o sea las dos bolsas grandes y la maleta gris." (Enfasis suplido). Sobre ese mismo incidente, la petición de *certiorari* expresa lo siguiente: "Durante el contrainterrogatorio el testigo manifestó que arrestó a Cucaracho en fracciones [sic] de segundos. Cuando el [sic] escucha al Teniente [sic] Rivera tocando la puerta del frente ya el [sic] tenía arrestado al Sr. Concepción c/p Cucaracho. El Agente [sic] Ito Miranda entró y le gritó al teniente [sic] que lo tenía arrestado y que había ocupado material." (Enfasis suplido). Previamente había expresado lo siguiente: "Luego que el señor Rodríguez se tira al suelo él ve dos bolsas grandes y una maleta gris." Las implicaciones que tienen ambas expresiones en cuanto al relato de la prueba presentada, es verdaderamente importante e impresionante tomando en cuenta la doctrina aplicada a este caso.

No presenta ninguna duda para el suscribiente que el recurso de *certiorari* de autos y el escrito para mostrar causa del Pueblo de Puerto Rico nos colocaban en posición de decidir sobre la expedición del auto, pero no era conveniente decidir sobre los méritos del mismo. Lo contrario, sería ubicar a este Tribunal en la posición de revocar al Tribunal de Primera Instancia, derrotando la presunción de corrección de los procedimientos, en ausencia de una exposición estipulada, narrativa o una transcripción de la prueba, en situaciones donde la determinación fáctica de lo creído por ese Tribunal, a base de la prueba ofrecida y admitida, es fundamental para descargar nuestra función revisora y, por ende, fiscalizadora.

Con el recurso de *certiorari* se acompañó el escrito presentado ante el Tribunal de Primera Instancia por la recurrente titulado *"Moción Solicitando Supresión de Prueba"* y el escrito presentado por el Pueblo de Puerto Rico titulado "Moción en Oposición a Supresión de Evidencia." En ambos escritos, las partes hacen una relación de lo declarado por el agente Jorge L. Rivera en la vista preliminar celebrada en el caso de autos, donde testificó lo siguiente:

*"El día 13 de enero de 1995, hora 11:40 am, [sic] se arrestó al señor José A. Roque Concepción porque éste tenía una Orden de Arresto expedida por el Honorable Juez José A. Morales Arroyo, por el delito de Escalamiento Agravado, con $50,000 de fianza. Este mismo día nos habíamos dirigido los agentes José Miranda y éste [sic] servidor para arrestar al individuo. Llegamos a la residencia D39, de Estancias de Gurabo, Puerto Rico, que a base de confidencias nos habían indicado que este individuo estaba pernoctando allí. Al llegar pude notar que la puerta de la Cocina se encontraba abierta, C-P cucaracho [sic] se encontraba en la mesa de comedor en unión a una muchacha trigueña quien resultó ser Ada Luz Vega Jiménez. Le indiqué que estaba arrestado, le pusimos las esposas entre el compañero Pito Miranda y yo. Este [sic] fue esposado en el piso y al mirar hacia la mesa pude notar que habían dos bolsas grandes conteniendo polvo blanco en su interior y una bolsa pequeña. Se detuvo a la señora Ada Luz Vega y al individuo y nos dirigimos a la División de Drogas y Narcóticos de Caguas y le entregamos dicha evidencia al Agente [sic] Justo Maldonado, quien luego de realizar la prueba de campo correspondiente me entregó un certificado de Positivo de Cocaína. Se le hicieron nuevamente las advertencias de ley a ambos detenidos. Este caso fue llevado ante la Honorable Juez Ivelisse Moyano quien luego de escuchar la prueba determinó causa probable a ambos fijándole una fianza a ella de $5,000.00 y a él de $50,000. Además de esta evidencia se ocuparon dos magazines color negro, 54 balas 9MM, una bala color bronce y parafernalia para*

*empacar droga la cual estaba en un bultito negro y gris, todo estaba encima de la mesa. "*

Esta es la única versión de los hechos que las partes han relacionado como lo ciertamente declarado por el agente Jorge L. Rivera. Sin embargo, en cuanto a lo testificado por éste el 13 de noviembre de 1995 durante la vista celebrada ante el Tribunal de Primera Instancia, Sala Superior de Caguas, con relación a la solicitud de supresión de evidencia, sólo tenemos ante nos la relación que de ese testimonio realiza la parte recurrente en su petición de *certiorari* y la breve relación de hechos e incidencias del caso que realizara el Pueblo de Puerto Rico en su escrito para mostrar causa, ante este Tribunal.

El Tribunal de Primera Instancia, Sala Superior de Caguas, emitió resolución, sobre el asunto ante nos, el 27 de noviembre de 1995. ▋Determinó como hechos probados y creídos lo siguiente:

1- Con el propósito de diligenciar una orden de arresto, cuatro policías se dirigieron a la residencia de la acusada, ya que habían recibido una confidencia que en dicho lugar se ocultaba la persona contra quien se había expedido dicha orden.

2- Los policías llegaron a la residencia de la acusada, la cual no tenía verja. Dos policías se sitúan en la puerta del frente con el propósito de tocar la misma y otros dos en la puerta de atrás para evitar que el sujeto a ser arrestado escapara del lugar.

3- La puerta de atrás estaba abierta y los policías vieron a la acusada y a la persona contra quien estaba dirigida la orden de arresto sentados a la mesa. Los policías entran a la cocina con el propósito de arrestar al sujeto y observan sobre la mesa sustancias controladas, la cual ocupan y arrestan a ambas personas.

4- Los cuatro policías van a diligenciar una orden de arresto válida expedida contra una persona que está eludiendo a la justicia.

5- El lugar donde se efectuó la intervención era uno que no tenía verja, setos vivos u otra barrera que impidiera la entrada al *"curtilage"* de la residencia.

6- Para evitar que la persona a ser arrestada pudiera huir del lugar, dos agentes se sitúan en la parte de atrás. Desde allí ven la puerta abierta y al sujeto a ser arrestado. Al entrar a la cocina, ven sobre la mesa sustancias controladas.

7- La falta de barreras que impidiera la entrada al *"curtilage,"* unido a una puerta abierta desde donde se divisa a la persona a ser arrestada y la presencia de la sustancia controlada a plena vista.

Con el trámite procesal acumulado en este caso, la expedición del auto nos permitiría revisar en sus méritos el asunto ante nos. Sin embargo, para ello, resultaría necesario el perfeccionamiento del presente recurso, a tenor con lo dispuesto en las Reglas 40, 41 y 42, entre otras, de nuestro Reglamento.

## II
Pautado lo anteriormente expuesto, procedemos a realizar la aplicación doctrinaria a los hechos que surgen del expediente de este Tribunal.

La mayoría, como cuestión de derecho, concluye lo siguiente:

*"Nuestra Constitución tiene en esta área una protección más amplia que la Enmienda Cuarta de los Estados Unidos y podría vedar intrusiones al hogar o áreas de expectativas razonables de intimidad que no estarían vedadas bajo los parámetros de la federal Pueblo v. Rivera Colón, supra. Sin embargo, la situación ante nosotros no requiere llevar a cabo un análisis sobre los contornos más amplios de la protección contra allanamiento irrazonable bajo nuestra Constitución, análisis que habría que hacer exclusivamente a la luz de la Sección 10 del Artículo II de nuestra Constitución. Pueblo v. Rivera Colón, supra. Esto es así porque, aun aplicando la protección mínima que confiere la Enmienda Cuarta de la Constitución Federal el allanamiento llevado a cabo en el presente caso*

*resulta en una violación dé dicha Enmienda Cuarta y a fortiori de nuestra más liberal Sección 10 del Artículo II."*

El Tribunal Supremo de Estados Unidos formuló, como excepción a la regla, que no se puede entrar al hogar de un tercero para efectuar un arresto. De mediar circunstancias extraordinarias o de emergencia, ciertamente se puede llevar a cabo dicho arresto sin la correspondiente orden. ■ Sobre ese particular el profesor Ernesto L. Chiesa ■ comenta que en cuanto a los factores pertinentes para considerar si hay realmente una situación de emergencia que justifique el arresto de un sospechoso en el hogar de un tercero sin la correspondiente orden, podrían ser los siguientes:

*"1- Si se ha cometido una ofensa grave.*

*2- Si había creencia razonable de que el sospechoso estaba armado.*

*3- Si había un alto grado de causa probable sobre la responsabilidad criminal del sospechoso.*

*4- Si había poderosas razones para creer que el sospechoso estaba en ese lugar.*

*5- Si era probable que el sospechoso escapara si no se detenía entonces.*

*6- Si se procedió pacíficamente al entrar al lugar.*

*7- La hora de entrada."*

La Juez de Instancia concluyó, como cuestión de hecho, que cuatro policías se dirigieron a la residencia de la acusada--recurrente con el propósito de diligenciar una orden de arresto contra otra persona, colocándose dos policías en la puerta del frente de la residencia con el propósito de tocar la misma y otros dos en la puerta de atrás para evitar que el sujeto a ser arrestado escapara del lugar. No podemos concluir en otra dirección que no sea, a base de esa situación fáctica, que los agentes no se disponían a entrar en la residencia de la acusada-recurrente, sino a tocar a su puerta en hora temprana de la tarde. La colocación de dos agentes en la puerta de atras de la cocina para evitar que el sujeto a ser arrestado escapara del lugar, estuvo sostenido sobre el hecho determinado que dicho sujeto estaba eludiendo la justicia. ■

La mayoría concluye que una vez obtenida por el agente Jorge L. Rivera a las 11:40 A.M., mientras se encontraba en Cayey, la información sobre el paradero del señor José A. Roque Concepción y su ubicación específica en la Urbanización Estancias de Gurabo, y dirigirse con otros compañeros a ese municipio, no había razón alguna para que los agentes en posesión de esa información dejaran de obtener una orden de allanamiento. Afirma, la mayoría, que si los agentes de la policía consideraban que el factor tiempo era esencial y que el sospechoso podía abandonar la propiedad antes de obtener la orden, pudieron dirigirse a dicho lugar y proteger las salidas de la casa (como lo hicieron) y arrestar al ciudadano cuando saliera de la casa o entrar a la misma una vez obtuvieran la orden de allanamiento.

No podemos estar de acuerdo con lo concluido por la mayoría. No era un recurso seguro para los agentes obtener una orden de allanamiento de un magistrado en ese momento con la información transmitida al agente Rivera. La confidencia sobre la presencia del señor Roque Concepción en esa residencia debía ser corroborada, para poder acudir ante un magistrado. ■ Ante la razón para creer que el sospechoso estaba en la residencia de la aquí recurrente y que se había eludido de la policía la noche anterior, los agentes decidieron tocar en la puerta del frente de la casa para indagar con la residente del lugar sobre la persona a ser arrestada. Decidieron colocar dos agentes frente a la puerta de la cocina para evitar que el sospechoso, de estar allí, pudiera evadirse nuevamente al percatarse de la presencia de los agentes de la Policía en la residencia. De los hechos que surgen del expediente de este Tribunal, no se puede inferir, razonablemente, que los agentes se colocaran en la puerta del frente de la residencia y la de la cocina para entrar a la residencia. En el caso de autos, los agentes se percataron, por estar abierta la puerta de la cocina, de la presencia del señor Roque Concepción dentro de la casa. ■ Al ser corroborada la presencia de la persona a ser arrestada dentro de la residencia, por observación personal de los agentes desde un sitio que resultaba razonable su presencia, ■ no

era necesario el escrutinio judicial en la búsqueda de una orden de allanamiento en protección de la garantía contemplada en la Cuarta Emnienda de la Constitución de los Estados Unidos. La recurrente no disfrutaba de una razonable expectativa de intimidad o privacidad de lo que acontecía en el sitio, dentro de la casa, donde ella se encontraba con el señor Concepción que era visible libremente a través de la puerta de la cocina.

Los agentes procedieron a entrar pacífica y rápidamente a la residencia para arrestar al señor Concepción evitando que éste tratara de ejercer alguna resistencia. Con su actuación los agentes evitaron que éste se pudiera escapar nuevamente. Bajo los hechos de este caso no era razonable, como afirma la mayoría, proteger las salidas de la casa (como lo hicieron) y arrestar al ciudadano cuando saliera de la casa. De la misma forma que los agentes lo observaban a él desde afuera y a través de la puerta de la cocina, también él los habría de ver si se quedaban amparados. Una vez se percatara de la presencia de los agentes de la Policía, era razonable creer, y muy probable, que tratara de escapar si no se le detenía inmediatamente. Se podía producir por parte de éste un confrontamiento con los agentes de la Policía. La noche antes se les había eludido. No tenía intención de entregarse a la Policía. No podemos estar de acuerdo con la mayoría, que los agentes sólo tenían a su disposición el curso de acción de quedarse protegiendo los accesos de la casa y esperar su salida o de ir a obtener una orden de allanamiento con los hechos que presenta nuestro expediente. Era razonable que tocaran a la puerta de la casa para preguntarle a su residente sobre la persona del señor Roque Concepción. No hay nada irrazonable en ello.

Al entrar los agentes al área exclusiva de la casa, donde estaba la persona a ser arrestada, éstos se percataron inadvertidamente y a simple vista de la presencia de dos bolsas grandes con polvo blanco en su interior y una bolsa pequeña ██ encima de la mesa frente a la cual estaba sentada la acusada-recurrente y la persona a ser arrestada. No registraron el resto de la casa. Se concretaron a intervenir en esa área exclusivamente. Así surge del escaso cuadro fáctico con que hemos contado en el proceso adjudicativo de este caso.

¿Estuvo justificada y fue razonable la penetración de los agentes a las áreas inmediatas de la residencia de la acusada-recurrente correspondiente a los accesos que conducen hacia la puerta del frente y a la puerta de la cocina, sin una orden de allanamiento, bajo lo contemplado por la Sección 10 del Artículo II de nuestra Constitución?

Como parte de su función oficial de diligenciar la orden de arresto, los agentes del orden público podían entrar al área de la zona de inmediación *("curtilage")* de la residencia que está implícitamente abierta al público. ██ Aquella área del "curtilage" que dirigió a los agentes a la entrada del frente de la casa de la acusada-recurrente con el propósito de procurar a la persona objeto del arresto está implícitamente abierta al público. ██ Los agentes no podían bajo la Constitución de Puerto Rico, en ausencia de orden judicial de allanamiento, atravesar subrepticiamente el "curtilage" de una residencia para atisbar por una puerta o ventana en circunstancias donde hay expectativa razonable a la intimidad por parte de los residentes. El área del "curtilage" donde se encuentra la puerta de atrás de la cocina de la acusada-recurrente, es un área que no surge de nuestro expediente que esté protegida de observaciones que pueda hacer cualquier transeúnte que por allí pase. ██ Esa área también está abierta implícitamente al público. De las determinaciones de hechos formuladas por la Juez de Instancia surge de esa forma.

La acción de los agentes de la Policía, en el caso de autos, de entrar al área del terreno donde enclava la residencia de la acusada-recurrente que conduce a la cocina, en hora temprana de la tarde, mientras otros dos agentes de la Policía tocaban la puerta del frente de esa casa para procurar por el señor Roque Concepción, objeto de la orden de arresto, resulta, bajo la atmósfera total de este caso, razonable y justificada. La posibilidad de que el sujeto objeto de la orden de arresto tratara de escapar una vez se percatara de la presencia de los agentes de la Policía en la parte del frente de la casa era muy probable, pues había eludido a la Policía anteriormente.

Era previsible algún grado de confrontación entre los agentes de la Policía y el sujeto a ser arrestado dado el historial de evadir a la Policía de este último. Al igual, era probable el ejercicio de violencia por parte del mismo para evitar el diligenciamiento de la orden de arresto. Por eso, una vez los agentes observan a través de la puerta abierta de la cocina al señor Roque Concepción sentado

frente a una mesa conversando con la acusada-recurrente, no podemos concluir, bajo los hechos que surgen de nuestro expediente, que esta última conservara una expectativa razonable a su intimidad y a la privacidad dentro de esa área de su casa. ■

Se puede prescindir de la orden judicial de allanamiento en circunstancias apremiantes, cuando a la luz de las circunstancias existe urgencia para la acción policial. ■ Sin embargo, en el caso de autos, los agentes no pretendieron entrar a la residencia sin la orden judicial, sino que su intención fue procurar por el sujeto tocando a la puerta del frente de la residencia entraron a la casa cuando pudieron constatar personalmente, por estar la puerta de la cocina abierta, que el sujeto a ser arrestado estaba dentro de la residencia. Es en ese momento que surge la circunstancia apremiante de la cual emana la urgencia de la acción policial.

De lo declarado por el agente Jorge L Rivera en la vista preliminar y lo determinado por la Juez de Instancia en la vista celebrada para discutir la solicitud de supresión de evidencia, surge que la sustancia controlada fue descubierta a plena vista por ese Agente quien, entendemos, tenía derecho a estar en el lugar desde el cual pudo observar tal prueba.

Fue descubierta esa prueba, por el Agente, inadvertidamente, surgiendo de su simple observación su naturaleza delictiva. ■ La acusada-recurrente se encontraba sentada junto al señor Roque Concepción, sujeto a ser arrestado, frente a la mesa donde fue hallado el material ocupado. Tomados como hechos básicos probados los datos anteriores, según surgen de nuestro expediente, se puede inferir razonable y lógicamente la probabilidad de que Ada Luz Vega Jiménez tuviera conocimiento, control y manejo de esa sustancia prohibida.

De los hechos que surgen del expediente de este Tribunal y el curso procesal tomado, resulta improcedente expedir el auto solicitado y revocar al Tribunal de Primera Instancia, sin el perfeccionamiento adecuado y necesario del recurso. Al someter el caso para adjudicación en sus méritos con el escaso trámite y perfeccionamiento del mismo, y los hechos que surgen del expediente de este Tribunal, no podemos llegar a otra conclusión que no sea la confirmación de la resolución recurrida.

**EFRAIN RIVERA PEREZ**
**Juez de Apelaciones**

**ESCOLIOS OPINION DISIDENTE DEL JUEZ DE**
**APELACIONES SR. RIVERA PEREZ — 96 DTA 85**

**1.** Se expide el auto, pero no se ordenó a las partes la preparación de una exposición narrativa de la prueba oral presentada.

**2.** Ejemplo de esa controversia es lo siguiente:

a) La interpretación de la parte recurrente a los efectos que ese agente atisbó por la puerta de la cocina, de la propiedad inmueble en cuestión, que se encontraba abierta. La parte recurrida interpreta que esa observación fue casual.

b) La parte recurrente expresa, en su petición de *certiorari*, pág. 3, que sobre la mesa el Agente observó dos bolsas grandes y una maleta color gris. La parte recurrida expresa en su escrito de mostrar causa, pág. 2, sobre el mismo asunto, que el Agente al mirar hacia la mesa pudo notar dos bolsas grandes conteniendo polvo blanco en su interior v una bolsa pequeña. Expresa, además, que ocupó dos magazines color negro, 54 balas 9mm., una bala color bronce y parafernalia para empacar droga la cual estaba en un bultito negro y gris.

**3.** Esas conclusiones fueron extraídas de la relación de la prueba que realiza la recurrente, petición de *certiorari*, pág. 3.

**4.** Esa conclusión fue extraída de la relación de la prueba que realizó la recurrente en su recurso, pág. 4. Sin embargo, allí expresó la recurrente lo siguiente: *"Indicó que en ésta [sic] ocasión no solicitó la orden porque él no iba en las de ocupar nada."*

**5.** Recurso de *certiorari*, pág. 4.

**6.** Apéndice IV, págs. 4-6, de la petición de *certiorari*.

**7.** Apéndice VII, págs. 9-11, de la petición de *certiorari*.

**8.** Apéndice X, págs. 14-16, de la petición de *certiorari*.

**9.** *Steagald v. U.S, supra; Dayton v. New York,* 445 U.S. 573 (1980); Welsh v. Wisconsin, 466 U.S. 740 (1984)

**10.** Chiesa Aponte, E., *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Editorial Forum., 1991, vol I, págs. 390, 391.

**11.** Esos hechos fueron determinados por el Tribunal de Primera Instancia a base del testimonio oral ofrecido por el agente Jorge L. Rivera, el 13 de noviembre de 1995, durante la vista celebrada con relación a la solicitud de supresión de evidencia presentada por la defensa.

**12.** En casos en que se solicita una orden de allanamiento mediante una declaración jurada de un agente del orden público basada en confidencias y en las observaciones del agente declarante, los criterios para determinar cuándo es que una confidencia justifica la expedición de una orden son los siguientes: (1) que el confidente previamente ha suministrado información correcta, (2) la confidencia conduce hacia el criminal en términos de lugar y tiempo, (3) la confidencia ha sido corroborada por observaciones del agente o por información proveniente de otras fuentes, y (4) la corroboración se relaciona con actos delictivos cometidos o en proceso de cometerse. *Pueblo v. Pagán Santiago,* ___ D.P.R. ___, **92 JTS 56,** opinión emitida el 20 de mayo de 1992.

**13.** En el caso de *Steagald v. U.S., supra*, la puerta estaba cerrada. La única ocupante de la residencia les indicó a los agentes que estaba sola. Los agentes irrumpieron la entrada y le ordenaron poner las manos en la pared mientras registraban toda la casa.

**14.** Desde la perspectiva de *Steagald v. U.S., supra,* y su progenie.

**15.** Testimonio del agente Jorge L. Rivera durante la vista preliminar.

**16.** *Pueblo v. Rivera Colón, supra.*

**17.** *Ibid.*

**18.** *Ibid.*

**19.** *Pueblo v. Meléndez,* opinión del 13 de julio de 1994.

**20.** *Pueblo v. Rivera Colón, supra.*

**21.** *Pueblo v. Dolce,* 105 D.P.R. 422 (1976).