Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>JEAN CARLOS FIGUEROA LUGO<br><br>Peticionario | KLCE202301255 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Caso Núm.<br>BLA2023G0022<br>BSC2023G0046<br>BSC2023G0047<br><br>Sobre:<br>Infr. Art. 404 L.S.C.<br>(2 cargos)<br>Infr. Art. 6.05 L.A. |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 27 de febrero de 2024.

I.

Producto de una intervención de tránsito llevada a cabo por la Policía de Puerto Rico, el 3 de julio de 2022, para realizar pruebas de fotómetro de transmisión de luz en la carretera #156 del Barrio Naranjo en Comerío, el Ministerio Público presentó dos (2) *Denuncias* en contra de Jean Carlos Figueroa Lugo (Figueroa Lugo). Le imputó infringir el Art. 404 de la *Ley de Sustancias Controladas de Puerto Rico*[1] y el artículo 6.05 de la *Ley de Armas de Puerto Rico de 2020*.[2]

Determinada causa probable para arresto, el 14 de julio de 2023, Figueroa Lugo instó *Moción de Supresión de Evidencia*. Alegó que su detención fue ilegal debido que solo hubo una "mera

---

[1] Ley Núm. 4 de 23 de junio de 1971, según enmendada.
[2] Ley Núm. 168 de 11 de diciembre de 2019, según enmendada.

infracción de ley de tránsito". El 2 de agosto de 2023, el Ministerio Público presentó *Oposición a Solicitud de Supresión de Evidencia.*

Celebrada la correspondiente vista de supresión de evidencia[3], el 19 de octubre de 2023 el Foro primario emitió *Resolución* declarando "No Ha Lugar" la *Moción de Supresión de Evidencia.* Inconforme, el 13 de noviembre de 2023, Figueroa Lugo acudió ante nos mediante *Certiorari.* Sostiene:

**Primer error:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE AIBONITO, AL DETERMINAR NO HA LUGAR LA SOLICITUD DE SUPRESIÓN DE EVIDENCIA AL AMPARO DE LA REGLA 234 DE LAS DE PROCEDIMIENTO CRIMINAL, *SUPRA*, PRESENTADA POR EL PETICIONARIO.

**Segundo error:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE AIBONITO, AL NO DETERMINAR QUE LA POLICÍA DE PUERTO RICO REALIZÓ UN BLOQUEO ILEGAL.

**Tercer error:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE AIBONITO, AL DETERMINAR QUE EL AGENTE DEL ORDEN PÚBLICO TENÍA MOTIVOS FUNDADOS PARA CREER QUE SE ESTABA COMETIENDO UN DELITO EN SU PRESENCIA.

**Cuarto error:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE AIBONITO, AL DETERMINAR QUE SE CUMPLÍA CON LA DOCTRINA DE EVIDENCIA OBTENIDA A PLENA VISTA.

**Quinto error:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE AIBONITO, AL DETERMINAR QUE EL TERCER REGISTRO REALIZADO POR LA POLICÍA, DONDE SE DESNUDÓ AL PETICIONARIO, FUE RAZONABLE POR RAZÓN DE SEGURIDAD.

El 27 de noviembre de 2023 emitimos *Resolución* concediéndole término de veinte (20) días a la Oficina del Procurador General de Puerto Rico para que expresara su posición. El 21 de diciembre de 2023, la Oficina del Procurador General compareció mediante *Escrito en Cumplimiento de Orden.* Con el beneficio de la

---

[3] Comenzó el 22 de septiembre de 2023 y culminó el 6 de octubre de 2023.

comparecencia de ambas partes, el derecho y jurisprudencia aplicable, procedemos a resolver.

## II.

Por su intricada relación, abordaremos en conjunto todos los señalamientos de error alegados por Figueroa Lugo. En su sustrato, plantea que su detención fue ilegal y por lo tanto, la evidencia obtenida a raíz de la misma debe excluirse. No tiene razón. Veamos por qué.

Como sabemos, la Cuarta Enmienda de la Constitución Federal y la Sección 10 del Artículo II de la Constitución del ELA, limitan la intrusión injustificada del Estado cuando se realiza irrazonablemente.[4] El propósito de tan preciados preceptos constitucionales es proteger el derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado.[5]

Nuestra Constitución dispone de forma diáfana que la evidencia incautada sin orden previa será inadmisible por ser el registro y/o la incautación irrazonable. Así que, como regla general es necesario que los agentes del orden público obtengan una orden, expedida por autoridad judicial, antes de efectuar un registro. Por consiguiente, toda incautación o registro llevado a cabo sin orden previamente expedida se presume irrazonable e inválido.[6] En tales circunstancias, el peso de la prueba para demostrar que los hechos particulares del caso justificaban la intervención recae sobre el Estado.[7]

---

[4] La Sección 10 del Art. II de nuestra Constitución, proclama que "[n]o se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables [...]
Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación [...]
Evidencia obtenida en violación de esta sección será inadmisible en los tribunales".
[5] Véase: *Pueblo* v. *Díaz, Bonano,* 176 DPR 601 (2009); *Pueblo* v. *Yip Berríos,* 142 DPR 386, 397 (1997); *Pueblo* v. *Santiago Alicea I,* 138 DPR 230, 235 (1995); *Pueblo* v. *Ramos Santos,* 132 DPR 363, 370 (1992).
[6] *ELA* v. *Coca Cola Bottling Co.,* 115 DPR 197 (1984).
[7] *Pueblo* v. *Vázquez Méndez,* 117 DPR 170, 177 (1986).

Los propósitos de esta garantía constitucional contra registros y allanamientos irrazonables consisten en: "1) proveer un remedio efectivo a la víctima del registro y allanamiento irrazonables o ilegales; 2) evitar que el Gobierno se beneficie de sus propios actos ilegales; 3) preservar la integridad del tribunal y, 4) disuadir a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación".[8] De esa forma, se protege el derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado.

La mencionada garantía constitucional se activa cuando agentes del Estado realizan un registro en circunstancias en las que la persona que alega la violación alberga subjetivamente una legítima y razonable expectativa de intimidad. En la evaluación de si la persona que levanta esta irregularidad albergaba dicha expectativa, se considera: 1) el lugar registrado o allanado; 2) la naturaleza y grado de intrusión de la intervención policiaca; 3) **el objetivo o propósito de la intervención;** 4) si la conducta de la persona era indicativa de una expectativa subjetiva de intimidad; 5) la existencia de barreras físicas que restrinjan la entrada o visibilidad al lugar registrado; 6) la cantidad de personas que tienen acceso al lugar registrado; y 7) las inhibiciones sociales relacionadas con el lugar registrado.

La Regla 234 de Procedimiento Criminal,[9] provee el mecanismo procesal mediante el cual un ciudadano puede reclamar los derechos que ésta consagra. Esta Regla dispone que toda "persona agraviada por un allanamiento o registro ilegal podrá solicitar al tribunal [...] la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro". Resolver una solicitud de

---

[8] *Pueblo* v. *Blase Vázquez*, 148 DPR 618, 628 (1999); Véase, además: E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. I. § 6.2, págs. 284-285.
[9] 34 LPRA Ap. II.

supresión de evidencia bajo dicha Regla 234, exige: 1) analizar si el promovente posee capacidad para invocar el privilegio; 2) en caso de que el registro se haya efectuado sin orden judicial, evaluar la posibilidad de que el Estado la obtuviera sin comprometer la eficacia del registro o la seguridad de los agentes; y 3) la razonabilidad del registro.[10] Lo crucial es determinar si la conducta policiaca violó la intimidad en la que confiaba el acusado.[11]

La regla de exclusión no solo protege contra evidencia vinculada directamente a la acción ilegal inicial, sino también contra aquella evidencia que sea obtenida como fruto de esa actuación ilegal.[12] Es decir, "a otra evidencia cuyo origen está vinculado estrechamente a la evidencia obtenida originalmente en violación de la protección constitucional".[13] Por consiguiente, "es consecuencia directa de la acción ilegal inicial".[14]

Ahora bien, existen distintas circunstancias en las cuales un registro sin orden resulta constitucionalmente permisible[15]. Estas son: 1) la existencia de motivos fundados,[16] 2) cuando se trata de un registro de la persona y del área circundante, siempre que sea incidental a un arresto legal,[17] 3) cuando existe consentimiento para el registro o se ha renunciado al derecho constitucional contra registros y allanamientos irrazonables,[18] 4) cuando el registro ocurre en una situación de emergencia,[19] 5) cuando se trata de evidencia

---

[10] *Pueblo* v. *Costas Elena, Rusell McMillan,* 181 DPR 426, 441 (2011).

[11] *Pueblo* v. *Costas Elena, Rusell McMillan,* 181 DPR 426, 441 (2011); Véase, Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* 3ra ed., Ed. West Publishing Co., 1996, Vol. III, pág. 418.

[12] Véase: *Pueblo* v. *Fernández Rodríguez,* 188 DPR 165 (2013) (Opinión Concurrente por el Juez Rivera García).

[13] E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos,* 1ra ed., Colombia, Ed. Forum, 1991, Vol. I, pág. 317; *Pueblo* v. *Negrón Martínez I,* 143 DPR 1, 16 (1997).

[14] *Pueblo* v. *Calderón Díaz,* 156 DPR 549, 564 (2002).

[15] *Pueblo* v. *Rosario Igartúa,* 129 DPR 1055 (1992).

[16] Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, R. 11; *Pueblo* v. *Calderón Díaz,* supra, pág. 557*; Pueblo* v. *Martínez Torres,* 120 DPR 496 (1988); *Pueblo* v. *Serrano, Serra,* 148 DPR 173 (1999).

[17] *Pueblo* v. *Malavé,* 120 DPR 470 (1988).

[18] *Pueblo* v. *González Rivera,* 100 DPR 651 (1972).

[19] *Pueblo* v. *Rivera Collazo,* 122 DPR 408 (1988).

que se encuentra a plena vista,[20] 6) cuando la evidencia es descubierta por medio del olfato del agente,[21] 7) cuando la evidencia ha sido incautada luego de haber sido arrojada o abandonada.[22]

En lo aquí pertinente, para determinar si un objeto se encuentra a plena vista y este puede ser incautado sin una orden judicial previa, deben estar presente los siguientes: (1) que el artículo se haya descubierto por estar a plena vista y no en el curso o por razón de un registro; (2) que el agente que observe la prueba tenga derecho previo a estar en la posición desde la cual podía ver la prueba; (3) que el objeto se haya descubierto por inadvertencia y (4) que la naturaleza delictiva del objeto surja de la simple observación.[23]

La determinación sobre una moción de supresión de evidencia bajo el palio de la Regla 234 de Procedimiento Criminal,[24] es una mixta, de hecho y derecho, por lo que el estándar de revisión es uno híbrido. En aquellas cuestiones calificadas como estrictamente de **derecho,** el estándar aplicable es *de novo*, bajo el cual no debemos ninguna deferencia al foro primario. En cambio, de tratarse de determinaciones de **hechos**, damos gran respeto y deferencia al juzgador de primera instancia y solo intervendremos de haber mediado pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba.[25]

### III.

Como punta de lanza, Figueroa Lugo indica que su detención respondió a un bloqueo de carreteras llevado a cabo ilegalmente. No nos convence.

---

[20] *Pueblo* v. *Báez López,* 189 DPR 918 (2013); *Pueblo* v. *Acevedo Escobar*, 112 DPR 770 (1982); *Pueblo* v. *Dolce,* 105 DPR 422 (1976).
[21] *Acevedo Escobar,* 112 DPR a la 779.
[22] *Pueblo* v. *Ortiz Zayas,* 122 DPR 567 (1988); *Pueblo* v. *Ortiz Martínez,* 116 DPR 139 (1985).
[23] *Pueblo* v. *Dolce*, 105 DPR 422 (1976).
[24] 34 LPRA Ap. II, R. 234.
[25] *Pueblo* v. *García Colón I,* 182 DPR 129, 165 (2011); *S.L.G. Rivera Carrasquillo* v. *A.A.A.*, 177 DPR 345, 356 (2009).

La norma de bloqueos de carreteras -*road blocks*-, reconoce la facultad de las autoridades de ley y orden para intervenir con conductores en determinadas circunstancias, sin que tengan motivos fundados previos para intervenir. Por ello, un bloqueo de carreteras efectuada sin que exista algún grado de sospecha individualizada es válido sujeto a un análisis de razonabilidad.[26] Vale recalcar que como norma general la utilización de bloqueos con un propósito general es ilegal, y solamente se permiten cuando el objetivo principal del bloqueo es suficiente para justificar el nivel de intrusión a la intimidad que es causada por la detención de un vehículo de motor.[27] Bajo nuestro esquema constitucional, detener un vehículo de motor utilizando como criterio la raza, el sexo o la edad del que conduce sería constitucionalmente discriminatorio.[28]

Por ello, debemos examinar cuál es el motivo o razón (objetivo principal) del bloqueo para determinar si éste es suficiente para justificar el grado de intrusión a la intimidad individual que supone la detención de un vehículo de motor. En este extremo nuestro más Alto Foro coincidió con lo resuelto en casi todas las jurisdicciones de Estados Unidos en cuanto a que la realización de un bloqueo de carreteras con el fin de encontrar a cualquiera que haya cometido un delito no es justificación para validar la detención[29].

IV.

Contrario a la contención de Figueroa Lugo, no estamos ante una detención en la que los agentes interventores carecían de motivos fundados para detenerlo. Al momento de la intervención, los

---

[26] *Pueblo* v. *Yip Berrios*, 142 DPR 386 (1997).
[27] Nuestro Tribunal Supremo en *Pueblo* v. *Yip Berrios* estableció los siguientes criterios a la hora de evaluar la validez de un bloqueo:
(1) la magnitud del interés público que motiva la realización del bloqueo;
(2) el grado con que el mismo adelanta dicho interés;
(3) el alcance de la intrusión con la intimidad.
Cada bloqueo debe ser evaluado individualmente para determinar si se ajusta a las exigencias constitucionales de nuestro ordenamiento y si en el balance de intereses resulta razonable un menor alcance de la protección constitucional ante el interés público involucrado. Íd.
[28] Íd.
[29] Íd.

agentes realizaban un operativo para detectar infracciones a la Ley Núm. 22-2000, incluyendo la prohibición del tintado de los cristales de autos en exceso de los parámetros dispuestos en el aludido precepto. Precisamente fue la oscuridad que presentaban los cristales del auto manejado por Figueroa Lugo, lo que facultó a los agentes a intervenir.

Al realizarle la consabida prueba fotométrica para medir el grado de oscuridad de los cristales, el sargento se percató a simple vista que había un cigarro de marihuana en el suelo del conductor. Ante la indagación del sargento sobre su autorización para portar marihuana, Figueroa Lugo aceptó no poseer licencia para el uso legal del cannabis. En tales circunstancias, no constituyó una desviación de las exigencias constituciones de Figueroa Lugo el no haberle hecho las advertencias de Miranda antes de constatar si poseía la licencia. La posesión de sustancias controladas de forma ilegal -cigarrillo de marihuana-, dio paso al arresto válido de Figueroa Lugo. A raíz del arresto válidamente efectuado, el registro incidental, así como el registro tipo inventario de la propiedad existente en el vehículo ocupado, fue también constitucionalmente válido.

Casi como una alegación estándar en los procesos de impugnación de este tipo, Figueroa Lugo añade que el testimonio del agente interventor fue estereotipado. Sin embrago, no elevó ante este foro intermedio ningún método de reproducción de la prueba oral -testifical-, que nos permitiera evaluar de forma adecuada su genérica alegación. Tampoco al examinar el expediente, percebimos indicios de que el testimonio del agente haya sido uno flaco y descarnado que tuviera que ser descartado por el juzgador. Por el contrario, del relato de ambas partes contenidos en sus escritos, nos parece que fue uno preciso y detallado, sin que en su valoración, el juzgador primario incurriera en error manifiesto.

Recordemos, que la determinación sobre una moción de supresión de evidencia bajo el palio de la Regla 234 de Procedimiento Criminal,[30] es una mixta, de hecho y derecho, por lo que el estándar de revisión es uno híbrido. En aquellas cuestiones calificadas como estrictamente de **derecho,** el estándar aplicable es *de novo*, bajo el cual no debemos ninguna deferencia al foro primario. En cambio, de tratarse de determinaciones de **hechos**, damos gran respeto y deferencia al juzgador de primera instancia y solo intervendremos de haber mediado pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba.[31] Ello así, a tenor con nuestra Regla 40,[32] y la doctrina interpretativa, no vamos a intervenir con dicho dictamen.

V.

Por los fundamentos antes expuestos, *denegamos* la expedición del presente recurso de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[30] 34 LPRA Ap. II, R. 234.

[31] *Pueblo* v. *García Colón I,* 182 DPR 129, 165 (2011); *S.L.G. Rivera Carrasquillo* v. *A.A.A.*, 177 DPR 345, 356 (2009).

[32] Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.