ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>ALFONSO TORRES TORRES<br><br>Peticionario | KLCE202401222 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Guayama<br><br>Caso Núm. G4TR202400082<br><br>Sobre:<br>Art. 7.02<br>Ley de Vehículos y Tránsito |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2025.

I.

El 29 de febrero de 2024, el Agente Cesar González Oppenheimer expidió un boleto administrativo de cincuenta dólares ($50.00) al Sr. Alfonso Torres Torres por infracción al Art. 6.06 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000, según enmendada.[1] Como parte de la intervención, también se le realizó una prueba de alcohol a Torres Torres, con un resultado de .132% de alcohol por volumen. Ante ello, el Ministerio Público le radicó cargos criminales por violación al Art. 7.02 de la aludida Ley 22-2000.[2]

El 24 de julio de 2024 Torres Torres solicitó la supresión de la prueba de embriaguez y cualquier admisión y/o manifestación incriminatoria, alegadamente hecha por él. Planteó que el agente interventor, González Oppenheimer, no tenía motivos fundados para detenerlo.

---

[1] 9 LPRA § 5156.
[2] *Id.* § 5202.

En la vista evidenciaría celebrada el 3 de octubre de 2024, el agente González Oppenheimer narró que se encontraba realizando el patrullaje preventivo en la carretera Núm. 1,[3] **donde observó a Torres Torres conducir su vehículo en *zig-zags,* desde el kilómetro 93.3 hasta el kilómetro 93.6**.[4] Manifestó que cuando le solicitó al conductor los documentos de rigor, observó que Torres Torres tenía los ojos rojizos, expelía olor a alcohol y tenía la lengua pesada.[5] El agente relató que, acto seguido, le indicó a Torres Torres el motivo de su intervención y este le entregó una licencia de mecánico en vez de la licencia de conducir.[6] Posteriormente le leyó las advertencias de ley,[7] y le realizó la prueba de alcohol.[8]

El 8 de octubre de 2024 el Tribunal de Primera Instancia emitió *Resolución* declarando **No Ha Lugar** la solicitud de supresión de evidencia. Determinó que, la prueba presentada reflejó que, el agente interventor observó cómo el vehículo manejado por Torres Torres se desplazaba de un carril a otro en una carretera de solamente dos vías. Precisó que, dichas vías discurren en dirección contraria y que se encontraba debidamente encintada y dividida. Concluyó, que "el agente González Oppenheimer tuvo motivos fundados para detener al acusado de epígrafe por lo cual no procede la supresión de evidencia obtenida en este caso".[9]

Inconforme con dicha determinación, el 8 de noviembre de 2024, Torres Torres recurrió ante nos mediante *Certiorari.* Plantea

---

[3] Apéndice I del recurso, págs. 1-7; *Vista evidenciaria respecto a Moción Sobre Supresión de Evidencia*, en 10:00-10:36.
[4] *Id.* en 13:50-14:03.
[5] *Id.* en 36:40-37:13.
[6] *Id.* en 37:13-37:22.
[7] *Id.* en 44:18-44:36
[8] *Id.* en 55:00-55:43.
[9] Apéndice I del recurso, págs. 1-7. El agente González Oppenheimer indicó que observó a Torres Torres "desde el kilómetro 93.3 al 93.6 que es cuando lo detiene. Indicó que la patrulla que manejaba estaba ubicada en la parte posterior del vehículo Nissan blanco. Expresó que esa carretera número 1 se compone de dos carriles, uno que discurre de este a oeste y el otro de oeste a este. Indicó que la carretera estaba dividida con línea entrecortada y el vehículo que observaba no se mantenía en el carril y cogía parte del otro carril y volvía a su carril. Expresó que lo comenzó a observar desde el kilómetro 93.3 al 93.6 para verificar que no estuviera distraído en el celular pero que continuó con la *misma* conducta, lo que le dio motivos fundados para detenerlo".

como único error,[10] que el Foro *a quo* se equivocó al no suprimir la prueba de embriaguez a pesar de que no existieron motivos fundados válidos para intervenir. Explica que, la infracción a la Ley de Tránsito que motivó al agente a intervenir con él, es decir, el Art. 6.06 de la Ley Núm. 22-2000, sobre conducción entre carriles, no se configuró. Señala que, el propio agente declaró que, del trayecto recorrido por este de Salinas a Santa Isabel hasta el km 93.3 donde obtuvo el motivo fundado para la intervención, no existen carriles de tránsito debidamente marcados, según requeridos por dicho artículo.

El 8 de noviembre de 2024 Torres Torres instó *Moción en petición para someter regrabación y/o transcripción de los procedimientos*. El 21 de noviembre de 2024 emitimos *Resolución* al Tribunal de Primera Instancia para que en el término de diez (10) días, entregara a Torres Torres la regrabación de los procedimientos celebrados el 3 de octubre de 2024 en la vista de supresión de evidencia.[11] El 6 de diciembre de 2024 Torres Torres presentó *Moción en cumplimiento de Orden*.

Contando con la sola comparecencia de Torres Torres y con el expediente del caso que nos ocupa, procedemos a resolver.

II.

A.

La cuarta Enmienda de la Constitución de los Estados Unidos de América,[12] así como la Sección 10 del Art. II de la Constitución

---

[10] Señalamiento de error:
ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN PRESENTADA POR EL ACUSADO A[Ú]N CUANDO LO QUE MOTIV[Ó] LA INTERVENCI[Ó]N CON EL MISMO FUE LA INFRACCI[Ó]N AL ART. 6.06 DE LA LEY 22, CONDUCIR ENTRE CARRILES, CUANDO DEL TESTIMONIO DEL MISMO AGENTE SURGE QUE DEL TRAYECTO RECORRIDO POR ESTE DE SALINAS A SANTA ISABEL HASTA EL KM 93.3 DONDE ADQUIRI[Ó] EL MOTIVO FUNDADO PARA LA INTERVENCI[Ó]N NO EXISTEN CARRILES DE TR[Á]NSITO DEBIDAMENTE MARCADOS, SEGÚN REQUERIDOS POR DICHO ART[Í]CULO.

[11] Una vez la parte peticionaria reciba la regrabación de la vista ordenada, concedimos un término de cinco (5) días para someterla a este Tribunal.

[12] Emda. IV, Const. EE.UU., LPRA, Tomo 1.

del Estado Libre Asociado de Puerto Rico,[13] limitan la intrusión no justificada del Estado en atención a las circunstancias en las que se produce o cuando se realiza inapropiadamente. Sus tres objetivos máximos son: 1) proteger la intimidad y dignidad de los seres humanos; 2) amparar los documentos y pertenencias de éstos; y 3) interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intervención.[14] Por ello, como regla general, es necesario que los agentes del orden público obtengan una orden, expedida por autoridad judicial, antes de efectuar un registro. A esta regla general se han reconocido jurisprudencialmente algunas excepciones, en las que el Estado tiene el peso de probar las circunstancias de excepción que justifican apartarse de la norma general.[15]

La Ley Núm. 22-2000 provee disposiciones, que, como parte de la política pública del Estado de combatir de la forma más completa, decisiva y enérgica posible la conducta antisocial y criminal de conducir de vehículos bajo los efectos de bebidas embriagantes,[16] autorizan intervenir con los conductores para exigirle la realización de una de las pruebas diseñadas para detectar la concentración de alcohol en el organismo. Son disposiciones que conceden a los agentes del orden público las razones o motivos específicos por los que pueden válidamente **intervenir** con conductores que transiten por las vías públicas del País.[17] Según el inciso (c) del Art. 7.09 del mencionado estatuto:

---

[13] Art. II, Sec. 10, Const. PR, LPRA, Tomo 1.

[14] *Pueblo* v. *Díaz, Bonano,* 176 DPR 601, 612 (2009); *Pueblo* v. *Calderón Díaz,* 156 DPR 549, 563 (2002); *Pueblo* v. *Santiago Ferreira Morales,* 147 DPR 238, 249 (1998); *Pueblo* v. *Muñoz Santiago,* 131 DPR 965 (1992); *Pueblo* v. *Ramos Santos,* 132 DPR 363 (1992); *Pueblo* v. *Martínez Torres,* 120 DPR 496 (1988).

[15] *Pueblo* v. *Malavé,* 120 DPR 470 (1988); *Pueblo* v. *Rivera Rivera,* 117 DPR 283 (1986); *ELA.* v. *Coca Cola,* 115 DPR 197 (1984);

[16] 9 LPRA § 5201; Véase *Pueblo* v. *Pacheco Báez,* 130 DPR 664 (1992) (sobre la validez de un arresto sin orden en Puerto Rico).

[17] 9 LPRA § 5209; Dicha ley establece que "toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo. . .habrá prestado su consentimiento a someterse a un análisis químico o físico de su sangre, o de su aliento. . .así como a una prueba inicial del aliento a ser practicada en el lugar de

(c) Cualquier agente del orden público o funcionario debidamente autorizado por ley, deberá requerir de cualquier conductor que se someta a cualesquiera de las pruebas iniciales, ya sea la prueba de campo estandarizada de sobriedad (Standard Field Sobriety Test) y/o los análisis químicos o físicos y/o cualquier otra prueba inicial después de haberle detenido si tiene motivo fundado para creer que dicha persona conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, **o cuando habiendo sido detenido por razón de una posible infracción a alguna ley o reglamento,** existieren motivos fundados para creer que conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, drogas o sustancias controladas al tiempo de su detención. (Énfasis nuestro).[18]

Como es de notar, este Art. 7.09 provee, de manera especial, los motivos fundados para que un agente del orden público intervenga con conductores en aparente estado de embriaguez.[19] Además de autorizar al agente interventor a realizar la prueba de campo o inicial en circunstancias en que existan motivos fundados para creer que la persona conducía bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, autoriza a realizar la prueba cuando el conductor es detenido por razón de una posible infracción a alguna ley o reglamento y al hacerlo obtiene motivos fundados para creer que la persona detenida conducía o hacía funcionar el vehículo en estado de embriaguez.[20]

---

la detención por el agente del orden público o cualquier otro funcionario autorizado por ley". *Pueblo* v. *Martínez Landrón*, 202 DPR 409, 418-419 (2019).

[18] *Id.*; Véase, además: *Martínez Landrón*, 202 DPR en las págs. 424-425 (donde el Tribunal Supremo de Puerto Rico concluyó que la intervención del agente de la policía cumplió con todos los parámetros reglamentarios al detener al acusado luego de observarlo manejar un vehículo de motor a exceso de velocidad y transitar entre carriles de manera indebida. Posteriormente le expidió un boleto administrativo por infracción al Art. 7.02 de la Ley Núm. 22-2000 y le realizó una prueba de alcohol.)

[19] *Id.*; Las Reglas 11 y 12 de Procedimiento Criminal de Puerto Rico disponen la normativa general de motivos fundados para arrestar sin previa orden judicial, ya sea por un funcionario del orden público o por persona particular. 32 LPRA Ap. II, R. 11-12.

[20] Conforme su inciso (e) del mismo Art. 7.09:

[C]ualquier agente del orden público podrá requerirle a cualquier persona que esté conduciendo o haciendo funcionar un vehículo de motor que se someta a cualquiera de las pruebas iniciales, ya sea la prueba de campo estandarizada de sobriedad (Standard Field Sobriety Test) y/o la prueba de aliento y/o cualquier otra prueba establecida. Estas pruebas serán practicadas en el lugar de la detención, salvo que por circunstancias de seguridad no se pueda realizar en el lugar de la detención, en cuyo caso se podrá realizar en un lugar cercano a la detención y/o en el cuartel más cercano, si dicho agente:

(1) Tiene motivo fundado para sospechar que la persona ha ingerido alcohol o ha utilizado sustancias controladas; o

Como puede apreciarse, bajo este inciso (c) se proveen dos instancias de motivos fundados para realizar la prueba de alcohol inicial: una, cuando el agente intervenga motivado por la creencia fundada de que la persona conduce bajo los efectos de bebidas embriagantes y dos, cuando habiendo intervenido por razón de una **posible infracción** a alguna ley o reglamento, el agente adviene en la creencia fundada de que la persona intervenida conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, drogas o sustancias controladas al tiempo de su detención.[21]

En tal sentido, el Art. 6.06 de la Ley 22-2000 se infringe y castiga como falta administrativa, la conducción de vehículos entre carriles. Específicamente exige que:

> Todo vehículo que transite por vías públicas cuyas zonas de rodaje se hallen debidamente marcadas por carriles de tránsito se mantendrá dentro de uno de ellos y no cruzará al otro carril sin tomar las precauciones necesarias para evitar la colisión con otro vehículo o causar daño a personas o propiedades. . . .
> . . . .
> Toda persona que viole las disposiciones de este Artículo incurrirá en falta administrativa y será sancionada con una multa de cincuenta (50) dólares.[22]

Ciertamente, la validez de la sanción que se imponga por infringir esta disposición depende de que se configuren todos y cada uno de sus elementos. Se configura cuando el conductor de un vehículo, que transita por una vía pública de, al menos dos carriles debidamente demarcados, se sale de la demarcación del carril en el que transita o cruza de un carril a otro sin tomar las debidas precauciones.

---

(2) Si ocurre un accidente y la persona se hallaba conduciendo uno de los vehículos involucrados en el accidente. *Id.*

[21] Esta prueba, conocida como la prueba inicial, tiene que realizarse en el lugar de la intervención. Si el análisis revela un por ciento mayor al límite de la Ley, el agente deberá requerirle al conductor que se someta a análisis posterior de la sangre o aliento. Si el resultado es menor que el límite, aún podría requerirse pruebas para la detección de sustancias controladas.

[22] *Id.* § 5156.

III.

Torres Torres alega, que la prueba de embriaguez inicial que se le realizó al momento de su intervención debe suprimirse por habérsele hecho en contravención a su derecho constitucional contra registros irrazonables. Basa su contención en que, el Agente interventor no tenía motivos fundados para detenerlo, debido a que la alegada conducta de conducir entre carriles no ocurrió, pues la vía pública no estaba debidamente demarcada, según exige el precitado el Art. 6.06 de la Ley Núm. 22-2000. No tiene razón. Nos explicamos.

En la vista evidenciaria el agente González Oppenheimer indicó que observó a Torres Torres desde el kilómetro 93.3 hasta el kilómetro 93.6 para verificar que no estuviera distraído en el celular, pero que continuó manejando en *zig-zag* y entre carriles desde el kilómetro 93.5 hasta llegar al negocio sito en el kilómetro 93.6, donde lo detuvo. Es decir, el manejo de vehículos de motor en la vía pública en *zig-zag*, de por sí, es suficiente para dotar a los agentes del orden público de los motivos fundados para creer que el vehículo está siendo manejado bajo los efectos de bebidas embriagantes o drogas.

Aun cuando aceptáramos que no se configuró la infracción al Art. 6.06 debido a que la vía pública no estaba debidamente demarcada, ello invalidaría la falta administrativa y multa impuesta, mas no la intervención ni su resultado. Nótese que el propio texto del Art. 7.09 refiere a los motivos fundados que se adquieren luego de una detención por una **posible** infracción a alguna ley. Si resultase que la infracción a la ley en efecto no se cometió o finalmente no se sostuviera, los motivos fundados obtenidos por el Agente interventor a raíz de la detención subsisten y con ello, la validez del registro realizado.

Eso fue precisamente lo ocurrido en este caso. Luego de detenerlo por transitar en *zig-zag* o entre carriles, el agente se percató que Torres Torres tenía los ojos rojizos, expelía olor a alcohol y tenía la lengua pesada. El atolondramiento de Torres Torres era tal, que, en lugar de la licencia de conducir, entregó al Agente su licencia de mecánico. Independientemente de que Torres Torres prevalezca en su impugnación al boleto de tránsito expedido por conducir entre carriles, según castiga el Art. 6.06, lo cierto es que el Agente interventor obtuvo válidamente los motivos fundados para exigirle a Torres Torres se realizara la prueba de alcohol inicial. Actúo correctamente el Foro *a quo* al denegar su supresión.

### IV.

Por los fundamentos expuestos, *expedimos* el Auto de *Certiorari* y *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones